LAND, J.
 

 On November 9,1928, the Ouach-ita parish school board adopted an ordinance creating and establishing a junior college district of the parish of Ouachita, comprising the entire parish, for the purpose of establishing a junior college, in accordance with the provisions of Act No. 173 of 1928.
 

 On the same date, another ordinance was adopted by the school board ordering a special election to be held in Ouachita parish junior college district, for the purpose of submitting to the qualified electors of that district the question of the levy of a special tax of one mill for ten years “for the purpose of acquiring, erecting, constructing, establishing, operating, and maintaining a Junior College District in the manner provided by law, with special reference to section 10, article 10 of the Constitution of 1921 and all other laws pertaining thereto.”
 

 On December 12, 1928, the special election was held, at which a majority vote was cast throughout the district and parish in favor of the proposition submitted.
 

 The Ouachita parish school board canvassed the returns of the election and promulgated the result. In order t'o prevent the school board from proceeding to levy and assess the special tax voted, plaintiffs, who are duly qualified electors and taxpayers residing in the city of Monroe, parish of Ouach-ita, and who own property within and without the city, have filed the present suit. In this suit, they seek to have Act No. 173 of 1928 declared unconstitutional, and to have the ordinances of November 9,1928, and the special election of December 12, 1928, annulled, and to perpetually enjoin the school board of Ouachita parish from levying and assessing the one mill special tax.
 

 Judgment was rendered in the lower court in favor of plaintiffs, decreeing Act No. 173 of 1928, the Ouachita parish junior college district, and the special tax created and imposed pursuant to the provisions of the act to be unconstitutional, null, and void, and annulling the ordinances of the Ouachita parish school board of November 9,1928, and the special election held under the ordinance of December 12,1928, and perpetually enjoining the school board from levying and assessing the one mill special tax.
 

 From this judgment, the Ouachita parish school board has appealed.
 

 Plaintiffs aver that, by article 12 of the Constitution of 1921, a system of public schools and education was created and organ
 
 *651
 
 ized for the state of Louisiana, consisting of elementary and secondary schools and
 
 higher institutions of learning;
 
 that the
 
 higher institutions of learning
 
 were declared to be those which were then embraced in the educational system, subject
 
 to the direct supervision
 
 of the state board of education, and such others as might thereafter be created by the Legislature; and that, for the equipment, support and maintenance of the
 
 higher institutions of learning
 
 provision was made for
 
 legislative
 
 appropriation.
 

 Based mainly upon this contention, plaintiffs attack the actions of the Ouachita parish school board, its ordinances of November 9, 1928, and the election held on December 12, 1928, the special tax therein submitted, and the provisions of Act No. 173 of 1928, as illegal, null, and void for the following reasons;
 

 1. That the provisions of Act No. 173 of 1928 seek to delegate to parish school boards authority to create
 
 higher institutions of learning
 
 as part of the state educational system, in contravention of section 9, article 12 of the Constitution of 1921, which restricts to the Legislature alone such authority, and to operate the same in violation of section 7 of that article.
 

 2. That Act No. 173 of 1928 seeks to impose, or to authorize the imposition of, taxes upon the property alone of the parish of Ouachita for the improvement, support, and maintenance of
 
 one of the higher institutions of learning,
 
 established as part of the
 
 state
 
 educational system, in violation of sections 1, 3, and 5 of article 10 of the Constitution of 1921, guaranteeing that taxation for state purposes shall be limited to 5% mills on the dollar for all purposes and shall be equal and uniform throughout the state, and in violation of section 9, article 12, which makes such institutions dependent for support upon
 
 legislative
 
 appropriation.
 

 3.That the purpose for which the special tax was submitted and voted, and for which it will be levied and expended (the acquisition, erection, construction, establishment, operation, and maintenance of a junior college), is not included among those enumerated and authorized by the provisions of section 10, article 10 of the Constitution of 1921, and that the tax is therefore prohibited, unauthorized, and void.
 

 1. The provisions of Act No. 173 of 1928 are as. follows:
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That Parish School Boards of the several parishes of the State of Louisiana, the Parish of Orleans excepted, shall have the authority to create Junior College Districts, each district to comprise an entire parish, and to create and establish Junior Colleges within said Districts. Pursuant to the Constitution of the State of Louisiana, the School Boards of the several parishes throughout the state, the Parish of Orleans excepted, shall have the authority to establish Junior College Districts and to order, hold and conduct Special Elections within said districts, so created, for the purpose of levying Special Taxes not to exceed two mills on all taxable property within the districts for a period of ten years to derive funds for constructing, aiding, supporting and maintaining said Junior Colleges; provided that the tax levied shall not exceed the millage provided for under Section 10, Article
 
 X
 
 of the Constitution of Louisiana. The proceeds of said taxes, which may have been voted, shall be turned over to the Parish School Boards, calling the elections, and to be placed in a special fund, dedicated and reserved for the purposes above set forth.
 

 “Section 2. That all Junior Colleges that shall be established in accordance with the above provisions shall be placed under the
 
 *653
 
 direction and supervision of the State Department of Education. That any Junior College so established
 
 must he operated, in connection with some State High School, and offer two years of standard college work, in keeping with accredited colleges, in advance of the courses of study prescribed for state high schools.
 
 It shall be the duty and province of the State Department of Education to prescribe the courses of study, hours of credit allowed, rules and necessary regulations for the proper government of said Junior Colleges, which direction and supervision shall be enforced by the * * * Parish School Boards of the districts so created.
 

 “Section 3. That the Parish School Boards and Parish Police Juries, voting as a unit in joint session, shall have the authority to choose the location of said Junior Colleges within the districts so created, provided that only one Junior College can.be created for any one parish or district, and .shall locate them
 
 so that they may be satisfactorily carried on in connection with some State Approved Sigh School.
 
 In selecting a location, the Parish School Boards
 
 * * *
 
 shall determine the places best suited and adopted
 
 for the students of the whole Parish to be served by said Junior College.”
 

 Section 1, article 12, of the Constitution provides that: “The educational system of the State sháll consist of all free public schools, and all institutions of learning, supported in whole or in part by appropriation of public funds,” etc.
 

 Section 2 of the same article declares in mandatory terms that: “The elementary and secondary schools and the higher educational institutions
 
 shall be so co-ordinated
 
 as to lead
 
 to the standard of higher education
 
 established by the Louisiana State University and Agricultural and Mechanical College.”
 

 To “co-ordinate” means “to regulate and combine in harmonious action; to adjust; to harmonize.”
 

 “Co-ordination” is the “act of regulating and combining so as to give harmonious results; harmonious adjustment.” Webster’s New International Dictionary.
 

 Act No. 173 of 1928, entitled an act “to authorize Parish School Boards of the several parishes throughout the State, the Parish of Orleans excepted, to create Junior College Districts, each district to comprise an entire parish, and to establish Junior Colleges within said districts,” etc., is an act of the Legislature clearly intended to carry out the provisions of section 2 of article 12, to co-ordinate the elementary and secondary schools and the higher educational institutions of the state, so “as to lead to the standard.of higher education.”
 

 It is plainly provided in section 2 of Act No. 173 of 1928: “That any Junior College so established
 
 must be operated in connection with some State Sigh School,
 
 and offer two years of standard college work, in keeping with accredited colleges,
 
 in advance of the courses of study prescribed for state high schools."
 

 Section 3 of the act also provides that “only one Junior College” can be created for any one parish or district, and that junior colleges shall be located “so that
 
 they may be satisfactorily carried on in connection with some State Approved Sigh School,”
 
 and “the places best suited and adopted
 
 for the students of the whole Parish to be served by said Junior College.”
 

 In the elementary schools of the state, only fundamental branches of study are taught. Const. 1921, art. 12, § 3.
 

 The secondary public schools of the state are not restricted by the organic law merely to high schools and to the usual courses of study prescribed therein.
 

 
 *655
 
 Something better is demanded by the Constitution, whose imperative mandate is proper co-ordination of the public schools so as to lead to the standard of higher education.
 

 The Constitution has left the Legislature free to determine in its own way the best method of effecting this co-ordination, and the method adopted has been fully set forth in Act No. 173 of 1928.
 

 We find nothing in the provisions of this act in contravention of the provisions of section 9, article 12 of the present Constitution. This section enumerates “the higher institutions of learning” of the state, including the Louisiana State Normal College, the Louisiana Polytechnic Institute, .etc., and provides
 
 legislative
 
 appropriations for their support and maintenance. It is further provided in this section that other higher institutions of learning may be created by the Legislature. Section 14, article 4, of the Constitution requires a vote of two-thirds of the members elected to each house of the Legislature to establish additional institutions of this character.
 

 “The higher institutions of learning” of the state are major institutions, are state-wide in their operations, are maintained by general taxation, and are absolutely independent of éach other. They are in an entirely different category from the “Junior Colleges” that may be established under Act No. 173 of 1928, as these colleges, so called, can have no legal existence or status whatever,
 
 except in connection with a state high sehoo-l,
 
 are purely local institutions, are maintained by local taxation, and are created for the sole purpose of supplementing the course of studies prescribed in the high schools of the state. A “Junior College” is permitted, under Act No. 173 of 1928, merely to supply the place of a super-high school, in the carrying out by the Legislature of the constitutional mandate of co-ordination of the elementary and secondary schools, and the higher educational institutions of the state, so as to lead to the standard of higher education. Necessarily, these “Junior Colleges” fall within the classification of secondary schools, and occupy the same legal status as a state high school in matters of special taxes to be voted at special elections for the housing and maintenance of these institutions.
 

 As “Junior Colleges” are not major state institutions of learning, they need not be created directly by the Legislature by a two-thirds vote. Nor is it necessary that they should be subjected to the direct supervision of the State Board of Education, as provided in • section 9, article 12, of the Constitution for “the higher institutions of 'learning” of the state.
 

 Since “Junior Colleges” are created and established solely for local purposes, in the scheme of co-ordination adopted by the Legislature in Act No. 173 of 1928, and as the students of the whole parish are to be served by the junior college established therein, it is clear that these institutions must be supported by local taxation. Special taxes, levied and assessed under section 10, article 10 of the Constitution, for the purpose of constructing and maintaining schoolhouses, are, unquestionably, public in character. The proceeds of such taxes, under the express terms of section 1 of Act No. 173 of 1928, must be turned over to the parish school boards calling the elections and placed in a special fund, dedicated and reserved for the purposes for which the taxes were voted. Necessarily, this constitutes an appropriation of public funds for these “Junior Colleges,” in compliance with section 1, article 12, of the present Constitution, which declares:
 

 “The educational system of the State shall consist of all free public schools, and all
 
 *657
 
 institutions of learning, supported in whole or in part
 
 by appropriation of public funds.”
 

 Legislative
 
 appropriation is not necessary, as junior colleges are not within the class of “the higher institutions of learning” of the state. Const. 1921, art. 12, § 9.
 

 Our conclusion is that the provisions of Act No. 173 of 1928 do not delegate to parish school boards authority to create “higher institutions of learning,” in contravention of section 9, article 12 of the Constitution; nor does such act violate the provisions of section 7, article, 12, which provides that:
 

 “The State Board of Education shall have supervision of all other higher educational institutions [the Louisiana State University and Agricultural and Mechanical College excepted], subject to such laws as the Legislature may enact.”
 

 2. The contention of plaintiffs that Act No. 173 of 1928 violates section 1, article 10, the uniform taxation clause of the state Constitution, is without merit, as the special tax authorized by section 1 of that act is levied on all taxable property within the junior college district, comprising the entire parish of Ouachita.
 

 Nor does Act No. 173 of 1928 violate section 3, article 10, of the Constitution, which provides that, “The rate of State taxation on property for all purposes shall not exceed, in any one year, five and one-quarter mills on the dollar of its assessed value,” since the tax levied is a special tax for constructing and maintaining public school houses, and may be imposed “in excess of the limitations otherwise fixed in this constitution.” Const 1921, art. 10, § 10.
 

 Besides, it is admitted that, inclusive of the one-mill tax herein sought to be re^ strained, the limitations of section 10, article 10, are not exceeded. Tr. 55.
 

 Nor is Act No. 173 of 1928 in conflict with section 5, article 10 of the Constitution, which declares that: “Parochial and municipal corporations
 
 and public boards
 
 may exercise the power of taxation, subject to such limitations as may be elsewhere provided in this Constitution, under authority granted to them by the Legislature for parish, municipal
 
 and local purposes,
 
 strictly public in their nature.”
 

 It is contended by plaintiffs that section 5, article 10, of the Constitution restricts the right of parishes to tax for purely parochial and local purposes.
 

 Act No. 173 of 1928 grants to the parish school boards of the several parishes of the state authority to order, hold, and conduct special elections within “Junior College” districts created by said school boards, for the purpose of levying special taxes not to exceed two mills on all taxable property within the districts for a period of ten years, to derive funds for constructing, aiding, supporting, and maintaining junior colleges; provided that the tax levied shall not exceed the millage provided for under section 10, article 10, of the Constitution of Louisiana.
 

 School districts are local political subdivisions of the state, and parish school boards, as the local governing authorities of school districts, are authorized by law as public boards to levy special taxes in' these districts for the purpose of constructing and maintaining schoolhouses. Const 1921, art. 19, § 10; Act No. 46, Ex. Sess. 1921; Act No. 209 of 1924. The special taxes so levied are therefore for local purposes.
 

 “Junior Colleges” are mere super-high schools, and not
 
 institutions of higher learning
 
 of the state. Eor these reasons, a special tax may be levied under Act No. 173 of 1928 for the construction and maintenance of a “Junior College” - as validly as for the con
 
 *659
 
 struction and maintenance of a schoolhouse for any state public high school.
 

 S. The special tax authorized to be levied by Act No. 173 of 1928 is imposed upon all of the taxable property in the parish of Ouachita, which comprises the Ouachita Parish Junior College district. The Ouachita Parish Junior College is purely a local institution, to be maintained by local taxation.
 

 Act No. 173 of 1928 does not impose, as contended by plaintiffs, a tax upon one locality for a purpose which is not local in extent. In our opinion, the special tax submitted and voted is authorized by the provisions of section 10, article 10 of the present Constitution.
 

 In the alternative, plaintiffs contend that the provisions of Act No. 173 of 1928 are inapplicable to the city of Monroe for the following reasons:
 

 ■ 4. That the conduct of and authority over public schools within and for the city of Monroe has been intrusted by section 9, Act No. 47 of 1900, exclusively to the Monroe city school board, and the night to levy taxes for the support and maintenance thereof has been delegated to that municipality and denied to all others; and, for this reason, that the attempt of the Ouachita parish school board to levy the special one-mill tax voted in this ease is ultra vires, arbitrary, and unwarranted, and that the provisions of Act No. 173 of 1928 are unconstitutional and void, in so far as they authorize said levy.
 

 5. That, in accordance with the provisions of section 17 of Act No. 100 of 1922, the city of Monroe, its residents, voters, and taxpayers, and especially the plaintiffs, are denied representation upon the Ouachita school board, and, in fact, they are without any representation whatever upon said board; and that the one-mill special tax imposed by said board upon the property of plaintiffs and of taxpayers generally in the city of Monroe constitutes taxation without representation, and is void.
 

 In the alternative, plaintiffs plead that the city of Monroe< is entitled to have representation on the Ouachita parish school board proportionate to its population, and that such representation is denied to the voters and taxpayers of the municipality of Monroe, in contravention of the provisions of section 10, article 12 of the Constitution.
 

 6. That, for all of the reasons assigned by plaintiffs, alternative and otherwise, Act No. 173 of 1928, the actions of the Ouachita parish school board, and the levy and assessment of the special tax by virtue of the provisions of said act, deny to plaintiffs the equal protection of the law, and will deprive them of their property without due process of law, in violation of the Constitution of the state, article 1, §§ 1, 2, and 6, and of the Fourteenth Amendment to the Constitution of the United States.
 

 4. Plaintiffs concede that the exemption from general parochial taxation formerly enjoyed by the city of Monroe has been withdrawn by sections 7 and 8, article 14, of the Constitution of 1921.
 

 The third provision of section 9, Act No. 47 of 1900, authorized the city of Monroe to establish, maintain, and support public schools therein, and, for that purpose, to expend three mills of its general ten-mill tax.
 

 It was further provided: “That the government, administration and control of the public schools of the City of Monroe shall be vested in a School Board, composed of five members, of which the Mayor shall be a member and ex-officio chairman; the other four members of said board shall be citizens of Monroe, and shall be elected at large by all the electors of the City of Monroe.”
 

 Pursuant to this authority, a system of
 
 *661
 
 public schools was organized and established in the city of Monroe and a school hoard elected.
 

 .However, it is provided in section 11, article 12, of the Constitution of 1921 that: “Municipal or parish school boards and systems now in existence by virtue of special or local legislative acts are hereby recognized, subject to control by and supervision of the State Board of Education, and the power of the Legislature to further control them by special laws.”
 

 The authority for the establishment and operation of a junior college, a public school, within the limits of the city of Monroe is found in Act No. 173 of 1928, enacted in pursuance of section 11, article 12, of the present Constitution. Under the express terms of this section, the municipal school board of Monroe, created by Act No. 47 of 1900, is placed under the power of the legislative branch of the government.
 

 The Legislature of the State of Louisiana created the city of Monroe and its school board, and has the right to modify or change its charter, under section 11, article 12, of the Constitution, so as to permit parish school boards to conduct public schools within its municipal limits.
 

 The city of Monroe is within a part of the parish of Ouachita, and there are no taxes levied upon the property within the city of Monroe other than those levied on other property in the parish.
 

 The principal high school conducted by the parish school board, and elementary schools, are located in the city of Monroe, and there is no existing law, constitutional or otherwise, that prohibits the school board of Ouachita parish from establishing schools within the corporate limits of the city of Monroe.
 

 5. The objection of plaintiffs to the authority of the Ouachita parish school board to impose taxes upon resident taxpayers and voters of the city of Monroe, on the. ground that they are denied representation upon the parish school board, is without merit.
 

 According to the admitted facts on which the case was tried, the city of Monroe is situated in wards 3 and 10 of the parish of Ouach-ita, and has a population that exceeds one-half of that of the entire parish. While each of the other wards has only one member on the parish school board, each of the two wards within the city of Monroe has two members on that board. Tr., pp. 55, 56.
 

 It is expressly provided in section 10, article 12, of the Constitution that: “Wherever a parish contains a municipality, the population of which is more than one-half of that of the entire parish, it shall have representation on the parish school board proportionate to its population.”
 

 Section 18 of Act No. 100 of 1922, “An Act bo provide a State Board of Education and Parish school boards,” etc., provides for representation of a municipality on the parish school board, under section 10, article 12, of of the Constitution, and limits the membership of the parish school board to 15.
 

 Section 17 of Act No. 100 of 1922 provides that: “When a parish school board, under existing law, has no jurisdiction over or control of the public schools of a city in such parish, and when the limits of a ward of such parish extend beyond the limits of such city, only that part of the ward outside * * * of such city shall be represented on the parish school board.”
 

 This section of Act No. 100 of 1922 has no application, in fact, to the present case, since the city of Monroe is situated in wards 3 and 10 of the parish of Ouachita, and each
 
 *663
 
 of these wards has two members on the parish school board. ' Tr., pp. 55, 56.
 

 Nor has this section any application, in law, since Act No. 173 of 1928, enacted in pursuance of section 11, article 12, of the Constitution; has given jurisdiction to the Ouachita parish school board to establish a junior college in the city of Monroe, in the parish of Ouachita, if the site is selected with the concurrence of the police jury of that parish.
 

 The city of Monroe does not come within the purview of this section, as it can no longer claim that the Ouachita parish school board has no jurisdiction over or control of the public schools within its municipal limits.
 

 6. The proposition submitted by the Ouachita parish school board at the special election held on December 12, 1928, was the levy of a special tax of one mill for a period of ten years, the proceeds of the tax to be used “for acquiring, erecting, constructing, establishing, operating, and maintaining a Junior College in said Junior College District in the manner provided by law, with special reference to section 10, article 10 of the Constitution of 1921 and all other laws pertaining thereto.”
 

 The ballot provided for the special election contains the same purposes, to be voted “for” or “against” as a whole or unit.
 

 . Plaintiffs contend that the special tax proposed to be levied is illegal, null, and void, as one special tax cannot be imposed- and used for several different purposes.
 

 Section 10, article 10, Constitution of 1921, provides for the levy of special taxes, for the purpose of “constructing or improving public buildings, school houses,” etc., “or for the maintenance thereof,” and “for giving additional support to public schools.”
 

 A proposition for “constructing and maintaining a court-house and jail” could not be submitted as a single proposition, for the obvious reason that there might be a wide difference of opinion among the voters and taxpayers as to whether both were necessary. But, in a case like -the present, it is apparent that any voter and taxpayer who favored the construction of the junior college would necessarily be in favor of its maintenance also, and vice versa. ■
 

 The purposes -of construction and maintenance of a junior college are so essentially interwoven, and so mutually dependent as to constitute practically a single proposition. To hold that these two propositions .should be submitted separately seems to us to be unnecessary, and, in our opinion, is not required by law. We find no merit in this contention.
 

 7. Our conclusion is that Act No. 173 of 1928 is constitutional and valid legislation, and that the levy and assessment herein of the special tax, by virtue of the provisions of said act, do not deny to plaintiffs the equal protection of the law, nor deprive them of their property without due process of law.
 

 It is therefore ordered that the judgment appealed from be annulled and reversed.
 

 It is now ordered that the injunction herein ■granted and perpetuated be dissolved and refused ; and that plaintiffs’ demands be rejected, and plaintiffs’ suit be dismissed at their costs.