HAMITER, Justice.
 

 The principal question represented by this litigation for determination is whether Mack Avant, the plaintiff, or G. S. Manning, one of the defendants, has been legally elected superintendent of parish schools of the Parish of Ouachita for the unexpired term of George W. Welch, resigned.
 

 On the trial of a rule nisi, after overruling numerous exceptions, the district court resolved the question in favor of the plaintiff, and, accordingly, rendered a judgment enjoining the Ouachita Parish School Board (sometimes referred to herein as parish school board), another defendant, from recognizing Manning as the superintendent, and commanding it to consider plaintiff as the duly elected official. Further, the judgment restrains and prohibits Manning from exercising or performing any of the duties of the office, from receiving the emoluments thereof, and from interfering with plaintiff in the performance and discharge of his duties.
 

 From the judgment Manning and the parish school board appealed suspensively.
 

 
 *993
 
 Although the judgment from which this appeal is being prosecuted was rendered on a hearing of a rule to show cause why a writ of preliminary injunction should not issue, counsel for both sides present the case here as if it had been tried on the merits. For the purpose of this consideration we shall treat it similarly.
 

 The Ouachita Parish School Board is and has been for many years composed of thirteen members, corresponding to the members of jurors on the Ouachita Parish Police Jury, there being one member each from Wards 1, 2, 4, 6, 7, 8 and 9, and two members each from Wards 3, 5 and 10. Wards 3 and 10 embrace property both within and without the corporate limits of the City of Monroe. In the city portion of these two wards live (they have lived there for years) school board members Felix A. Terzia (from Ward 3) and James H. Trousdale (from Ward 10); the other members from these wards reside outside the city limits.
 

 Since long prior to the adoption of the Constitution of 1921 the parish school board has operated and maintained a high school and several grade schools within the limits of the City of Monroe, as well as schools outside that municipality. Also, the City of Monroe, as authorized by its charter, Act No. 47 of 1900, has operated and maintained within its confines public educational facilities, including a high school and some grade schools. The Monroe School Board consists of the Mayor and four elected members, all of whom are required to be residents of the municipality. Thus, within the city two separate and distinct public school systems have operated for a long period of time and are now operating.
 

 At a meeting of the parish school board held on May 7, 1948, with all thirteen members present and participating, George W. Welch tendered his resignation as superintendent and it was accepted. To serve the unexpired portion of ms term ending on July 1, 1949, G. S. Manning (a defendant) and Mack Avant (plaintiff) then were nominated. The election which followed resulted in Manning receiving seven votes and Avant six votes. Thereupon Manning was declared the successor to superintendent George W. Welch, effective as-of July 1, 1948. Among those voting for him were Felix A. Terzia and James H. Trousdale, members residing in those portions of Wards 3 and 10, respectively, within the limits of the City of Monroe.
 

 On June 30, 1948, Avant instituted the instant injunction proceeding in which he assails the election of Manning, he contending that under the provisions of Section 17 of Act No. 100 of 1922 Terzia and Trous-dale (who voted for Manning) were neither de jure nor de facto members of the school board and, therefore, were not entitled to vote. In the petition it is alleged that they were not on May 7, 1948, and never had been, duly constituted and elected members of the school board; that they were not occupying any offices created by
 
 *995
 
 law; that their voting was illegal; and that on excluding their participation in the election plaintiff received six votes and Manning five.
 

 Plaintiff’s position was upheld by the district court, as the above-mentioned judgment discloses, and this appeal followed.
 

 In their brief appellants’ counsel state:
 

 “While numerous collateral and subordinate questions arise in this case, there are two main issues which must be resolved :
 

 "First: Does plaintiff have the right under the law to enforce or protect the rights which he is asserting by resort to a writ of injunction, or is he relegated to the bringing of an intrustion into office suit; and,
 

 “Second: Irrespective of the form of his action and his right to an injunction, does the applicable law support his contention as to the non-existence of the School Board offices held by Messrs. Ter-zia and Trousdale, and otherwise afford him a cause or right of action which can be asserted in Court.
 

 “If the first of these issues is resolved in favor of defendants, then the judgment appealed from must be reversed and set aside and plaintiff’s rule for a preliminary injunction dismissed.
 

 “Such a holding, however, would leave open for determination the second question, which is squarely presented for decision * .-l: *
 
 !>
 

 Counsel for appellee, to quote from their brief, say:
 

 “If Terzia and Trousdale were de jure or de facto members of the Board, then Manning having received 7 votes was legally elected Superintendent for the unexpired term, and the resolution adopted by the School Board so declaring was legal and valid, and plaintiff’s suit should be dismissed.
 

 “If Terzia and Trousdale were not de jure nor de facto members of the School Board, then they were without right to participate in the election of a Superintendent and the acts of the School Board in declaring Manning elected were illegal, null and'void, and the judgment of the lower Court * * * is correct and should be affirmed.
 

 “Whether Terzia and Trousdale occupied any offices created by law, or were de jure or de facto members of the School Board, or were prohibited from serving as members of said Board, is to be determined by the construction placed upon those provisions of the Constitution relative to public schools and school boards, and upon Section 17 of Act 100 of 1922. Since this is the paramount issue we first devote our argument to this point.”
 

 The most important issue tendered, obviously, is whether or not Terzia and Trousdale were legally serving as members of the Ouachita Parish School Board. We shall consider it first.
 

 
 *997
 
 Our Constitution of 1921, in Section 10 of Article 12, recites:
 

 “The Legislature shall provide for the creation and election of parish school boards which shall elect parish superintendents for their respective parishes, and such other officers or agents as may be authorized by the Legislature. The State Board of Education shall fix the qualifications and prescribe the duties of parish superintendents, who need not be residents of the parishes. Wherever a parish contains a municipality, the population of which is more than one-half of that of the entire parish, it shall have representation on the parish school board proportionate to its population.”
 

 And in Section 11 of Article 12, it states:
 

 “Municipal or parish school boards and systems now in existence by virtue of special or local legislative acts are hereby recognized, subj ect to control by and supervision of the State Board of Education, and the power of the Legislature to further control them by special laws.”
 

 Complying with the mandate contained in Section 10 of Article 12 of the Constitution, the Louisiana Legislature adopted Act No. 100 of 1922, the 17th Section of which reads, insofar as pertinent, as follows:
 

 “There shall be a parish school board for each of the parishes, and these several parish school boards are constituted bodies corporate with the power to sue and be sued under the name and style (Name of Parish) Parish School Board. Citation shall be served on the President of the Board and in his absence on the Vice-President.
 

 “The membership of the parish school board shall be as follows:
 

 “There shall be elected by the qualified voters of each police jury ward of the several parishes of the State a member of the school board of such parish for each police juror in said ward, whose term of office shall be for a period of six (6) years.
 

 “When the parish school board, under existing law, has no jurisdiction over or control of the public schools
 
 of a city
 
 in such parish, and when the limits of a ward of such parish extend beyond the limits of such city, only that part of the ward outside the limits of such city shall be represented on the parish school board, and shall have only one member of said board, who shall be an elector of the said ward living outside the limits of such city, and shall be elected by the voters of said ward living and voting outside the limits of said city.” (Italics ours.)
 

 In considering the quoted part of Section 17, the correct interpretation of which will determine the instant issue, it is important to notice first that provision is made for the election, in each police jury ward in a parish, of a school board member for each police juror. The number of police jurors in a ward, in other words, is determinative of the number of school board members to which that ward is entitled.
 
 *999
 
 111 keeping therewith Wards 3 and 10 of ■Ouachita Parish, seemingly, are entitled to two members each, since each is represented on the police jury by that number of jurors. But is that provision rendered inoperative with respect to Wards 3 and 10 of Ouachita Parish (therein is the City of Monroe which owns and operates a separate system of public schools) by the remaining language of the quoted portion of Section 17 which states that when the parish school board has no jurisdiction over ■or control of the public schools
 
 of a city
 
 in such parish the ward of which that city is a part shall be represented by only one school board member who shall be an elector of the ward living outside the limits of the city?
 

 Interpreting the words “of a city” in a possessive sense,, that is as having reference to the public schools
 
 belonging to a ■city
 
 in the parish, counsel for plaintiff insist that the statutory language in question is applicable here, and renders the preceding provision inoperative, because the Ouachita Parish School Board did not have in 1922, and does not now have, any jurisdiction over or control of, the high school and grade schools belonging to and ■maintained by the City of Monroe; and, it being applicable, that Terzia and Trous-dale (who do not live outside the limits of the City of Monroe) are and have been illegally serving as school board members.
 

 Counsel for defendant, on the other hand, construe the words “of a city” in a descriptive or geographical sense, that is as relating to the public schools
 
 within a city
 
 in the parish; and, under that construction, they maintain that the statutory language under consideration is inapplicable here, and that Terzia and Trousdale are legally elected and serving board members, because the parish school board certainly does have, and it has had since prior to 1922, jurisdiction over and control of the public schools which it owns and operates within the City of Monroe.
 

 The intention of the Legislature in employing the words “the public schools
 
 of a city
 
 in such parish”, therefore, is called in question. But it, apparently, already has been resolved in favor of defendant’s position by this court in McHenry v. Ouachita Parish School Board, 169 La. 646, 125 So. 841, 845. Therein the plaintiffs sued to prevent the Ouachita Parish School Board from levying, under the authority of Act No. 173 of 1928, a special parish wide tax which had been voted by the electors of Ouachita Parish for the establishment and maintenance of a junior college district. Among the numerous objections urged to the constitutionality of the 1928 statute, insofar as it applied to Ouachita Parish, were the following:
 

 “That the conduct of and authority over public schools within and for the city of Monroe has been intrusted by section 9, Act No. 47 of 1900, exclusively to the Monroe city school board, and the right to levy taxes for the support and mainten-
 
 *1001
 
 anee thereof has been delegated to that municipality and denied to all others; and, for this reason, that the attempt of the Ouachita parish school board to levy the special one-mill tax voted in this case is ultra vires, arbitrary, and unwarranted, and that the provisions of Act No. 173 of 1928 are unconstitutional and void, in so far as they authorize said levy.
 

 “That, in accordance with the provisions of section 17 of Act No. 100 of 1922, the city of Monroe, its residents, voters, and taxpayers, and especially the plaintiffs, are denied representation upon the Ouachita school board, and, in fact, they are without any representation whatever upon said board; and that the one-mill special tax imposed by said board upon the property of plaintiffs and of taxpayers generally in the city of Monroe constitutes taxation without representation, and is void.”
 

 In passing upon these objections this court observed and concluded:
 

 “The Legislature of the State of Louisiana created the city of Monroe and its school board, and has the right to modify or change its charter, under section 11, article 12, of the Constitution, so as to permit parish school boards to conduct public schools within its municipal limits.
 

 “The city of Monroe is within a part of the parish of Ouachita, and there are no taxes levied upon the property within the city of Monroe other than those levied on other property in the parish.
 

 “The principal high school conducted by the parish school board, and elementary schools, are located in the city of Monroe, and there is no existing law, constitutional or otherwise, that prohibits the school board of Ouachita parish from establishing schools within the corporate limits of the city of Monroe.
 

 fk * * * jjí ifs
 

 “This section [17] of Act No. 100 of 1922 has no application, in fact, to the present case, since the city of Monroe is situated in wards 3 and 10 of the parish of Ouachita, and each of these wards has two members on the parish school board. * * * (Brackets ours.)
 

 “Nor has this section any application, in law, since Act No. 173 of 1928, enacted in pursuance of section 11, article 12, of the Constitution, has given jurisdiction to the Ouachita parish school board to establish a junior college in the city of Monroe, in the parish of Ouachita, if the site is selected with the concurrence of the police jury of that parish.
 

 “The city of Monroe does not come within the purview of this section, as it can no longer claim that the Ouachita parish school board has no jurisdiction over or control of the ptiblic schools within its municipal
 
 limits(Italics ours.)
 

 Plaintiffs counsel challenge the applicability of the McHenry decision, contending that the court therein did not have before it the issue of the right of Wards 3 and 10 of Ouachita Parish to have two school
 
 *1003
 
 board members each. They argue that, while the court did conclude that each of these wards was represented by two members, the conclusion was based on a stipulation of counsel that the City of Monroe then had a population in excess of one-half of that of the entire parish and on the provision of the Constitution, Section 10 of Article 12, that a city thus populated shall have representation on the school board proportionate to its population; whereas, in evidence in this case is the United States census for' 1940 showing that Monroe’s population is not more than one-half of that of the parish.
 

 But irrespective of the McHenry decision, and just as if this were a matter submitted for initial consideration, it is our present opinion that the disputed words “of a city” in Section 17 were used by the Legislature in a geographical sense, as defendants maintain, not in a possessive sense.
 

 Contrary to the contention of counsel for plaintiff, the language is not clear and free of ambiguity. The key word or preposition “of”, according to Webster’s New International Dictionary, Second Edition, is susceptible of numerous different connotations, some of which are the following:
 

 “14. Indicating that with respect to which an attribute is ascribed, with regard to which a fact is affirmed, or to which a measure of time or extent is applied; in respect to;
 
 in;
 
 — now
 
 to a considerable extent replaced by in;
 
 * * *
 

 “17. Indicating the possessive relationship, otherwise expressed by the possessive case; belonging, pertaining to, or connected, with (a place, time, person, or thing);. * *»
 

 Thus the preposition “of” is used not only to indícate a relationship of possession but it is often employed also synonymously with the word “in”. That the latter use is common and popular cannot be denied. Frequently, one hears the expressions: "The antique shops of New Orleans”; “The architecture of Mexico”; “The cafes of Paris”; “The sunshine of California”. In each of these, unquestionably, the word, “of” connotes location.
 

 Too, it has been interpreted in numerous decisions throughout the United States as. indicating place or location. The “streets or highways of Baltimore” refer to thoroughfares within the City of Baltimore, not particularly to those belonging to that city. Patapsco Electric Co. v. City of Baltimore,. 110 Md. 306, 72 A. 1039, 1041. The “courts ‘of’ the state” include city courts, although the latter form no part of the state court system. Gregory v. City of Memphis, 157 Tenn. 68, 6 S.W.2d 332. The “lands of the state” means the land located within the state and not merely that owned by the state. Sisson v. Board of Supervisors of Buena Vista County, 128 Iowa 442, 104 N.W. 454, 458, 70 L.R.A. 440.
 

 It would seem manifestly unreasonable- and unfair if the Legislature, by the lan
 
 *1005
 
 guage of Section 17, intended to deny to the people of a city representation on the parish school board where such board, as in the instant case, owns, maintains and operates numerous public schools within the limits of that city. Clearly, people so situated should be represented in the formulating and directing of policy, if for no other reason, with respect to the education of their children.
 

 Let us suppose that the City of Monroe should relinquish to the Ouachita Parish School Board the ownership, operation and maintenance of all of its schools except one small grade school serving a very few •children. According to the theory of plaintiff, even under those circumstances, the people of Monroe would not be entitled to representation on the parish school board because that 'board would have no jurisdiction over or control of the one remaining school belonging to the City of Monroe. We •can not believe that the Legislature contemplated a result of that kind.
 

 Section 17 of Act No. 100 of 1922 was intended to apply, we think, where a city owns, maintains and operates exclusively all of the public schools within its limits •and where the parish school board’s activities are restricted to the schools of the parish located outside or beyond those limits. In that situation the parish school board would have no jurisdiction over or control of the public schools of (in) the city ■in such parish.
 

 Since the Ouachita Parish School Board has jurisdiction over and control of many of the public schools of (in) the City of Monroe, the disputed language of Section 17 is not applicable here. And it follows logically that the City of Monroe may have representation on such board; that Felix A. Terzia and James IT. Trousdale were and are de jure members; and that defendant Manning was legally elected superintendent for the unexpired term of George W. Welch, resigned.
 

 In aid of their position plaintiff’s counsel make reference to those provisions in Section IS of Article 12 of the Constitution of 1921, as last amended in 1946, which announce a rule for the distribution of tax authority between parish and municipal school boards in those parishes containing the cities of Monroe, Lake Charles and Bogalusa. But we do not find' that such provisions militate against the conclusion which we have reached.
 

 In view of our announced holding it is unnecessary for us to pass upon the defense that plaintiff is without right to resort to the writ of injunction, his remedy being an intrusion into office suit.
 

 For the reasons 'assigned the judgment appealed from is reversed and set aside, and it is now ordered that the injunction herein granted be dissolved and that the demands of plaintiff be rejected and the suit dismissed at his costs.
 

 O’NIELL, C. J., takes no part.