CULPEPPER, Judge.
The testamentary executors of the estate of S. B. Laub seek a declaratory judgment establishing the quantum of a special legacy bequeathing an interest in certain mineral leases. The defendant, Mrs. Elizabeth Braman May, is the legatee involved. From an adverse judgment, the legatee appealed.
This is a companion suit to Forman, etc. v. Chase, 202 So.2d 689, in which the issues are the same and in which a separate decision is being rendered by us this date.[1]
There were several issues presented in the trial court, but the parties have by joint motion limited the issue on appeal to the quantum of the legacy.
The general facts are that the testator, S.B. Laub, was a prominent attorney of Natchez, Mississippi, who owned extensive interests in oil and gas leases, royalties, etc. in Mississippi and Louisiana. He died on February 2, 1963, leaving a last will and testament, with several codicils, which was probated in Adams County, Mississippi. Ancillary probate proceedings, filed in Concordia Parish, Louisiana, include an inventory showing that Mr. Laub owned oil and gas interests in 9 different parishes in Louisiana, appraised at a total of $180,970.
Mr. Laub’s wife predeceased him and he left no ascendants nor descendants. The principal legatees are his nephews and two nieces of his predeceased wife, the latter being the defendant legatees in these suits.
The issue arises out of the following language in a codicil dated October 26, 1962, bequeathing to the defendant, Elizabeth Braman May:
“ * * * a three sixty-fourths (%t) interest in any right, title and interest which I have in any oil, gas or mineral lease or leases, * * *.”[2] (Italics supplied; then follows a description of leases in Acadia Parish, La.)
*687 At the time of his death, the testator owned only x%4 of the whole of the oil, gas and mineral leases in question. The plaintiffs contend the above quoted language in the will should be construed to bequeath an undivided %4 “of” *%4 to Mrs. May, i. e., that %4 should be multiplied by 15Ái. The defendant contends that since the word “in”, rather than “of”, was used, you do not multiply; hence the legacy is %t “in” the 1%4 owned by the decedent, i. e., %4 “of” the whole.
The general rules applicable here for the interpretation of legacies are set forth in LSA-C.C. Articles 1712 and 1715.[3]
In Succession of Jarreau v. Succession of Jarreau, 184 So.2d 762 (La.App. 3rd Cir. 1966) we quoted from Succession of Blue, La.App., 126 So.2d 195, as follows:
“ ‘The function of the court is to construe the will as written, to interpret what the testatrix said, not what we think she meant to say, and to give effect only to the express and not to the conjectural or probable intention of the testatrix. Succession of Montegut, 217 La. 1023, 47 So.2d 898; Succession of Price, 202 La. 842, 13 So.2d 240. We must give effect only to what is indicated by the language used in the will and restrict ourselves to this language itself when the intention of the testatrix can be ascertained therefrom. LSA-Civil Code Arts. 1712, 1715. Succession of Simo, 205 La. 592, 17 So.2d 889.’ ”
In re Succession of Abraham, 136 So.2d 471 (La.App.3rd Cir. 1962) we quoted from Succession of Rougon, 223 La. 103, 65 So. 2d 104 the following:
“ ‘It is fundamental that in the interpretation of a last will the intention of the testator is all important and controlling and the ascertainment of it must be undertaken, without departing, however, from the proper signification of the terms of the testament. LSA-Civil Code, Article 1712 * * * Where the words are plain and unequivocal, on. the other hand, a forced interpretation should not be adopted. Succession of Vatter, 192 La. 657, 188 So. 782; Succession of Stallings, 197 La. 449, 1 So.2d 690.’ ”
The defendant legatee contends first that the words of the will are plain and unequivocal. She concedes that if the word “of” had been used, she would receive only %4 multiplied by 1%4. However, defendant argues that here the testator did not use the word “of”, but instead used “in”; that when used with double fractions these two words have different meanings; that when “of” is used you multiply; but when “in” is used you do not multiply.
Defendant cites no authority for this distinction and we have been unable to find any. Webster’s New World Dictionary, College Edition, 1955, shows that both “in” and “of” have many different connotations. For instance, some of the different meanings for the word “of” are:
“1. a) derived or coming from; as, of good family, men of Ohio. * * * 2. belonging to: as, the leaves of the book, the square root of a number. 3. a) having; possessing; as a man of property, b) containing: as, a bag of peanuts. * * * 7. having to do with; relating to; pertaining to; with reference to; concerning; about: as, don’t think harshly of me.”
In the same dictionary, the word “in” is given these connotations among others:
“1. contained or enclosed by; inside; within: as, in the room, in the envelope. *688 * * * 6. limited by the scope of: as, in my opinion. * * * 18. into: as, come in the house: into is generally preferred in this sense. It expresses inclusion with relation to space, place, time, state, circumstances, manner, quality, substance, a class, a while, etc.”
We find nothing in any dictionary which states that a certain connotation must be given to “of” or “in” when used with double fractions; nor do we find any indication that any distinction is made between these two words when used with double fractions.
In Avant v. Ouachita Parish School Board, 215 La. 990, 41 So.2d 854 (1949), the issue was the construction of a statute [4] which provides that when the parish school board has no jurisdiction or control over the public schools “of a city”, the ward in which the city is located shall be represented by only one school board member (rather than by the same number as are on the police jury). There were several public schools geographically located in the city, but none of them were operated by the city, they instead being operated by the parish school board. The court held the word “of” was used in the possessive' rather than the geographical sense, and hence the ward was entitled to more than one school board member. In the course of the opinion, the court makes this statement which, although not expressly pertinent to double fractions, indicates that the words “of” and “in” are frequently used interchangeably:
“Thus the preposition ‘of’ is used not only to indicate a relationship of possession but it is often employed also synonymously with the word ‘in’. That the latter use is common and popular cannot be denied. Frequently, one hears the expressions: ‘The antique shops of New Orleans’; ‘The architecture of Mexico’; ‘The cafes of Paris’; ‘The sunshine of California’. In each of these, unquestionably, the word ‘of’ connotes location.”
For other cases construing the words “of” and “in” see 29 Words and Phrases p. 199; and 20A Words and Phrases p. 13. Generally, these cases conform with the holding in Avant v. Ouachi-ta Parish School Board, supra, that the two words are frequently used interchangeably to convey the same meaning, one of which is that of location or inclusion within a place or thing. No cases are found discussing the use of either word with double fractions.
In summary, counsel have not cited, nor have we been able to find, any dictionary, textbook, jurisprudence or other authority which makes a distinction between the words “of” and “in” when used with double fractions. On the contrary, the general rule appears to be that these two words are frequently used interchangeably. It is conceded that if the word “of” had been used by Mr. Laub, we would multiply %i x 1%4. We think the word “in”, as used here, has the same meaning as “of”.
Having reached this conclusion, the defendant appellant’s next argument also falls. Defendant contends that since the decedent was an experienced attorney, who personally owned extensive oil, gas and mineral interests, he understood the “difference” between the words “in” and “of” when used with fractions and used the former intentionally. As stated above, we find no authority that these two words have different meanings when used with double fractions. It follows that the decedent, being an expert in such terminology, also understood there is no well recognized distinction.
Actually, this special knowledge of the terminology indicates that Mr. Laub prob *689 ably intended the legatee to receive only %4 of whatever interest he owned. For, if he had intended the legatee to receive %4 of the whole, it is more probable than not that he would have added additional language to make it clear.
The final argument of the defendant legatee is that, considering the will as a whole, and the circumstances under which this particular legacy was made, the intention of the testator was to leave the defendant the larger rather than the smaller amount. Defendant points out that in other portions of the will she was treated very generously; that these particular mineral leases were appraised at $20,700 in the succession proceedings; that under the construction urged by the executors this means that this particular legacy to the defendant, Mrs. May, has a value of only about $963. Defendant argues that Mr. Laub would not have gone to the trouble to draft and execute a codicil to an already very lengthy will to leave her so small an amount.
The executor’s answer to this argument is that the codicil in question was executed within about one month after a producing well was completed on the leases; that Mr. Laub wanted his wife’s nieces to share in any income produced therefrom, but he did not know at the time, October of 1962, whether the value of the leases would ultimately be great or small. Hence, it is impossible to say what he thought as to the value of the legacy.
We agree with the position taken by the executors. For, as the trial judge stated: “ * * * it is not within the province of the court to change the express language of a will to fit such a purely speculative or conjectural intention of the testator.”
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.

. These two eases were previously before us but the appeal was dismissed on procedural grounds. Forman, etc. v. May, La.App., 201 So.2d 683 (3rd Cir. 1967).

. A similar bequest was made in this codicil to the defendant in the companion case, except that a interest was given to Mrs. Mary Braman Chase.

. Art. 1712. In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.
Art. 1715. When, from the terms made use of by the testator, his intention can not be ascertained, recourse must he had to all circumstances which may aid in the discovery of his intention.

. Act 100 of 1922, Sec. 17.