LE BLANC, Justice.
At its regular Session held in 1950 the Legislature of Louisiana passed several Acts having to do with John McNeese Junior College located at Lake Charles in Calcasieu Parish and Northeast Center located at Monroe, in the Parish of Ouachita. *633 The first of these laws which became Act No. 69 of that year had reference to John McNeese Junior College and the second, Act No. 527, to Northeast Center. The language in both is identical and with the exception of the names of the two colleges or institutions their provisions are exactly the same. It is’necessary for us to quote only the provisions of one of them for the purpose of stating what this case is about. We quote from Act No. 69, the enacting clause of which reads as follows:
“Section 1. Be it enacted by the Legislature of Louisiana, that the name John McNeese Junior College located at Lake Charles, Calcasieu Parish, Louisiana, an existing state institution, be changed to the name, McNeese State College, and the Louisiana State Board of Education is directed to provide for said school, a school of higher education in the Arts and Sciences, for the education of white persons of the State of Louisiana;
“Section 2. That the Louisiana State Board of Education shall administer the affairs of said institution.
“Section 3. That the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College shall transfer and convey the site and facilities now known as the John McNeese Junior College, located at Lake Charles, Calcasieu Parish, Louisiana, together with all buildings and improvements thereon, and all other lands and properties incidental thereto, to the State of Louisiana, and the Louisiana State Board of Education is authorized and directed to accept said property for the State and for the benefit of said McNeese State College.
“Section 4. That the State of Louisiana shall appropriate sufficient funds for building, equipping, and continued maintaining the said institution.
“Section 5. That all laws and parts of laws in conflict with this act, be, and the same are hereby repealed.”
The other two Acts have for their purpose the placing of both these institutions under the administration of the Louisiana State Board of Education. They are Acts No. 70 and No. 528 of 1950, LSA-RS 17:10. They are both amendments to Section No. 10, Title 17 of the Louisiana Revised Statutes of 1950 which enumerated and listed the various educational institutions in the State which are under the administration of the State Board of Education. The first of these last two Acts merely adds the name of “McNeese State College” and the second adds the names of both “McNeese State College” and “Northeast Louisiana State College” to the list of State institutions. Act No. 70 which adds the name of “McNeese State College” contains a clause to the effect that its provisions “shall have no effect until McNeese State College is established by Senate Bill No. 3 of the present session.” Act No. 528 has an effective provision which reads that “this act shall have no effect until Senate Bill No. 306 [of the present session is] enacted into law.”
*635 Carrying out the various provisions of this legislation, the Louisiana State Board of Education and the Board of Supervisors •of Louisiana State University and Agricultural and Mechanical College entered into certain contracts whereby the Board ■of Supervisors of Louisiana State University and Mechanical and Agricultural College transferred and conveyed the site •and facilities of both institutions to the Louisiana State Board of Education to the end that they both could be administered by said State Board of Education, all as directed in Acts Nos. 69 and 527.
For the sake of brevity Louisiana State University and Mechanical and Agricultural College will hereafter be referred to as Louisiana State University.
The present suit was brought by Carroll G. Jones, a resident of Lincoln Parish. He alleges himself to be a duly qualified elector and tax payer, residing in the City of Ruston, Louisiana, and that as such he is entitled to have the functions of the State Government carried out according to, and within the limitations set uip by the organic l'aw of the State. He avers that he owns property both real and personal, in Lincoln Parish, on which he pays taxes to various taxing authorities and that by the action of the said State Board of Education and the Louisiana State University he has been deprived of his property without due process of law and denied the equal protection of laws in contravention of Article 1, Section 2 of the Constitution of Louisiana.
His complaint is that all of the said Acts of the Legislature under which the State Board of Education and Louisiana State University are proceeding and acting, are repugnant to the organic law of the State as set out in Article 4, Section 14 of the Constitution of 1921, which requires a two-thirds vote of the members elected to the Legislature in order to establish an educational institution other than those existing in Louisiana in 1921.
He specifically alleges that Act No. 69 received only fifty-four favorable votes upon final passage in the House of Representatives, Act No. 70 sixty-six votes, Act No. 527 fifty-nine votes and Act No. 528 sixty-five favorable votes upon final passage; that all of said votes for each were less than the necessary two-thirds votes of the members elected to the House of Representatives and therefore the said acts are illegal, null and void and of no effect whatsoever. In view of these matters he avers that all of the actions of the Louisiana State Board of Education which attempted to obtain a transfer of McNeese State College and .Northeast Louisiana State College from Louisiana State University are null and of no effect, having been done in contravention of the said Constitution and hence • they are illegal, null, void and of no effect; that all'such transfers made and actions taken should be annulled and set aside.
*637 In the prayer of his petition plaintiff asks for service on both Louisiana State Board of Education and the Board of Supervisors of Louisiana State University and for a rule on them to show cause why a preliminary injunction should not issue, restraining and enjoining said two boards from carrying out the provisions of the said Acts of the Legislature and that after due trial' there be judgment in his favor decreeing all of the said Acts unconstitutional, illegal, null and void. Further he prays that a writ of mandamus issue under authority of the judgment to be rendered, commanding both of the said boards to take whatever action that may be necessary to convey the site and facilities of the said two colleges back to the Board of Supervisors of the Louisiana State University.
The State Board of Education and the Board of Supervisors of Louisiana State University filed a joint answer in which they deny all of the allegations of plaintiff’s petition, and further answering allege that the State institution, originally known as John McNeese Junior College, the name of which was changed to McNeese State College by Act No. 69 of 1950, was created by and under Act No. 267 of 1938 and that this latter Act was passed by the Legislature of that year by more than two-thirds of the members thereof, and that the institution formerly known as Northeast Center Junior College, the name of which was changed to Northeast Louisiana State College by Act No. 527 of 1950, was created by the Legislature of Louisiana by Act No. 231 of 1934, as amended by Act No. 339 of 1936, LSA-RS 17:1491, 17:1531, 17:-1532, and that the said Acts were adopted by a vote of more than two-thirds of the members' of the State Legislature[1].
They aver further that pursuant to Act No. 267 of 1938, LSA-RS 17:1491, 17:-1521, 17:1522, John McNeese Junior College was established as a State institution of learning and was continuously operated as such from the year 1939 until its name was changed to McNeese State College by Act No. 69 of 1950, and since that time it has been operated as such and as therein directed.
They aver also that pursuant to Act No.. 231 of 1934, as amended by Act No. 339-of 1936, Northeast Junior College was established as a State institution of learning and was continuously operated as such until its name was changed to Northeast Louisiana State College by Act No. 527 of 1950, and since that time it has been so operated and as directed by said Act.
Lastly defendants aver that they have made the transfers authorized by Acts Nos. 69, 70, 527, and 528 of 1950 which are presumed to be, and are actually, constitutional, and not in conflict with any of the prohibitory provisions of the Constitution of Louisiana or other prohibitory law.
*639 The question of plaintiff’s right to institute and maintain this suit was not raised in the pleadings or on the trial of the case and although doubt is expressed as to such right, no contest is made on that point because it is the desire of defendants to have the fundamental issue involved in the case settled by a final judgment as soon as possible.
Upon trial and submission in the District Court judgment was rendered in favor of the plaintiff decreeing Acts Nos. 69 and 527 of 1950 unconstitutional, null and void, and as a consequence, hol'ding' their companion Acts Nos. 70 and 528 to be ineffective and inoperative. All transfers, acts and actions made and taken either individually or jointly by the defendant boards in carrying out the terms of the said Acts were declared to be null ab initio and the two boards were permanently enjoined from carrying out their provisions. Further, the judgment decreed that the alternative writ of mandamus which had issued be made peremptory and defendants were ordered to take whatever action was necessary to transfer the sites and facilities of the two colleges back to the Board of Supervisors of the Louisiana State University. From that judgment the present appeal was taken.
Section 14 of Article 4 of the State Constitution whose provisions it is claimed the Acts of the Legislature under consideration violate, reads as follows: “No educational or charitable institution, other than the State institutions now existing, or expressly provided for in this Constitution, shall be established by the State, except upon a vote of two-thirds of the members elected to each house of the Legislature.” It is conceded that none of the four bills which became the four acts of the Legislature with which we are concerned received a two-thirds vote of the members elected to each house and the question to be decided thereforé is whether by enacting these bills into l'aw the Legislature undertook to establish two new State educational institutions or did it merely effect some changes in two which already existed. In order to decide the issue it becomes necessary to delve into the history of both institutions. The history of McNeese College as reflected by the record is as follows :
In 1938, at its regular session, the Legislature enacted into law Act No. 267 of that year, the title of which reads as follows: “Authorizing the establishment of a Junior College division of the Louisiana State University and Agricultural and Mechanical College to be located in the Parish of Calcasieu near Lake Charles, Louisiana.” The Act then goes on to provide that when the cons'ituted authorities or any lawful public authority of Calcasieu Parish shall construct, donate and make available, a suitable physical plant and provide adequate facilities for the establishment of such a college, the Board of Supervisors of Louisiana State University is authorized to enter into an agreement with such authority of the Parish of Calcasieu to operate and *641 maintain the same as a division of the University. By the terms of the Act itself, the Board of Supervisors of Louisiana State University is granted full authority to carry out its provisions and also included in its provisions is the, right in the parish authorities to make a donation or transfer of the plant and facilities to the State University. All corporate authority and powers of supervision vested by law in the Board of Supervisors to manage the University are extended to the Junior College division. The only restriction is with respect to the curriculum to be offered and that was to be limited to the subjects of the first two years of college work then being or thereafter offered in the College of Arts and Sciences of Louisiana State University. Provision is also made in the Act for the necessary appropriation by the Legislature for the operation of said Junior College division over and above the amounts Louisiana State University may deem necessary for its own maintainance and operation. It is conceded that this bill received a two-thirds vote of the members elected to each house of the Legislature. Pursuant to its provisions all necessary steps were taken by the Board of Supervisors of Louisiana State University; title to the property was transferred to it and the College from that time on was operated out of funds appropriated by the Legislature to Louisiana State University. In some instances, certain appropriations for specific purposes were made direct to McNeese itself.
Northeast Center has a different factual background. It was first established as Northeast Junior College by virtue of the provisions of Act No. 173 of 1928, LSA-RS 17:1380-17:1382. As such it became and was operated as a parish-wide school in the Parish of Ouachita and was supported entirely with funds derived from taxation in that parish. However in 1934 its status was changed. By an agreement entered into between Ouachita Parish School Board and the Board of Supervisors of Louisiana State University, which agreement was approved and ratified by the Legislature by Act No. 231 of 1934, the Ouachita Parish School Board furnished to Louisiana State University the facilities of the College consisting of the grounds, buildings and equipment, without cost, and Louisiana State University was to have full and complete control over its operation, its curricula organization, and was to conduct the school on the educational level of a Junior College. This agreement was to extend for a period of three years from its date, August 12, 1933.
Subsequently by virtue of another agreement between the same two public bodies the three year limitation was eliminated. This agreement was also approved by the Legislature by Act No. 339 of 1936. This Act was passed by a two-thirds vote of the members elected to each house.
By Act No. 291 of 1944, the Legislature authorized the Ouachita Parish School *643 Board to transfer title to all of its property both real and movable, to Louisiana State University. The Act also provides that it’ is the intent and purpose of the School Board and the Board of Supervisors of Louisiana State University that the said Board of Supervisors will conduct and operate the property and facilities so transferred for educational purposes as a Junior College division of the State University. The Act did not, in our opinion, produce any change in the status of the College as a State Institution which had already been created by prior Acts of the Legislature. Rather it seems to have strengthened its status as such by providing for the vesting of the absolute fee simple title to its property in Louisiana State University, thus further ratifying the former agreement which had been approved' by previous legislation, and under which the College was being operated through Louisiana State University. The provisions of the' Act of 1944 were carried out by having the transfers therein authorized made and the College continued to be conducted, maintained, and operated as it had been before through regular appropriations made by the State Legislature, all as in the case of. McNeese College in the Parish of Calcasieu.
It is the contention ’of the plaintiff, in which he was supported by the District Judge, that all of these Acts of the Legislature had the effect of creating merely Junior Colleges, or branches or divisions of Louisiana State University; that they are not State educational institutions of learning but rather schools of that character such as Northeast Center was held to be by this Court in the case of McHenry v. Ouachita Parish School Board, 169 La. 646, 125 So. 841, and which are nothing more than secondary schools as distinguished from the higher educational institutions of the State. It is important to observe that the decision in the McHenry case was rendered in 1929, a few years before the legislation which subsequently changed the status o'f Northeast Center came into effect. The case involved a consideration of Act No. 173 of 1928 and the application of its provisions in relation to Northeast Center which had been established under it as a Junior College in the Parish of Ouachita. It is distinctly stated in the opinion that Junior Colleges to be created under its provisions were to be under the jurisdiction of and supported by the various parishes in which they were to be established and for that reason they could not be considered as State institutions. Any statements in the opinion regarding Section 14 of Article 4 of the Constitution as applying to higher-institutions of learning of the State were unnecessary for the decision of the issue presented in the case and may be disregarded as dicta.
A careful consideration of Section 14, Article 4 of' the Constitution, whose language is plain and unambiguous, leaves us convinced that the educational institu *645 tions therein contemplated are not limited to the higher educational institutions of learning but to State educational institutions of any character regardless of how they may be designated.
Generally speaking a State educational institution is one, title to whose property is vested in the State, whose physical plant and facilities are controlled and managed by the State through one of its State-wide boards and whose funds for its operation are derived from appropriations made by the State Legislature. All of these requirements are met in the case of each of the two institutions, whose status is here under consideration. By the terms of Act No. 267 of 1938 establishment of a Junior College which became John Mc-Neese Junior College was authorized and all provisions were made for it to come under the supervision and regulation of the Board of Supervisors of Louisiana State University. In due time, pursuant to the further provisions of that Act, title to its property was transferred to Louisiana State University, which was in effect placing it in the State itself, and thereafter it derived all of its funds for its support and maintenance by appropriations of the State Legislature. The same thing happened with respect to Northeast Center in another and indirect way, all as hereinbefore pointed out.
The fact that they were referred to as Junior Colleges or as branches or divisions of the State University in the Act creating them had no effect on their status as State colleges or institutions. They were branches of the University in the sense that title to their property was vested in the State University and it was through it that they received their financial support from the State. All of their scholastic and other activities were conducted by their own administrative staff. As branches, they occupied a status different from that of the numerous departments of Louisiana State University, all of whose various activities are conducted and operated by the administrative office of that institution.
But it. is the contention of the plaintiff, that by the passage of those Acts, whose constitutionality he challenges, an attempt was made to change their status entirely in that they became new State educational institutions and therefore the Acts required a two-thirds vote of the elected members of the Legislature in order for them to be so established.
With this we do not agree as all that these Acts did was merely to enlarge the capacity and the curricula of the two institutions by providing that they shall be four year colleges instead of two, and to remove them from the jurisdiction and control of one State body, the Board of Supervisors of Louisiana State University, to another State body, the State Board of Education. The transfer of the title of both from Louisiana State University to the State Board of Education had no effect whatever in changing the title insofar as *647 it vested in the State itself, and the change in jurisdiction from the one Board to the other produced no change in their status as educational institutions. The money for their support was still to come from the same source, that is from appropriations by the Legislature, the only difference being that it would be channelled through the State Board of Education instead of through Louisiana State University. There is nothing in Section 14 of Article 4 of the Constitution which prohibits the change in the name, the set-up and control of a State educational institution once established as such. The prohibitions contained in the Section are aimed at the State establishing new educational institutions and not to keep it from converting an existing State educational institution into one of higher learning.
As an indication of what he says was the intention of the Legislature to establish two new institutions of learning, plaintiff points to Section 3 of Act No. 70 of 1950, which places McNeese State College under the administration of the State Board of Education. Section 3 of that Act reads as follows: “This act shall have no effect until McNeese State College is established by Senate Bill No. 3 of the present session.” A clearer and more definite intention of the purpose the Legislature had in mind in enacting Senate Bill No. 3 into law however, is to be gained from the various amendments which were made and adopted after it had been introduced in its original form. As originally introduced its title did indicate that is was an Act to create and establish a school of higher education at Lake Charles, in Calcasieu Parish, but the amendments that were proposed from the floor of the House of Representatives left no doubt whatever that after the bill had reached that stage in the process of its enactment into law, the Legislature deliberately concluded that they were merely changing the name of an already “existing State institution” and providing for its transfer from one State Board to another and for its operation and maintainancs, all as appears in Section 1 of the Act which was quoted in full at the beginning of this opinion.
 In view of all that has been said we deem it hardly necessary to refer to the rule of construction so well established in the jurisprudence of Louisiana and the country at large, that the Courts will not declare an Act of the Legislature unconstitutional unless it is shown that it clearly violates the terms of the articles of the Constitution. The burden was on the plaintiff in this case to show such violation of these Acts with the provisions of Section 14, Article 4 of the Constitution of this State. It is our firm opinion that he failed to carry that burden and from this it results that the judgment of the lower court which declared them unconstitutional will have to be reversed.
For the reasons assigned it is ordered that the judgment appealed from be reversed, *649 avoided and set aside and it is further ordered, adjudged and decreed that there be judgment in favor of the defendants, The State Board of Education and. The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, and against the plaintiff, Carroll G. Jones, dissolving the writs of injunction and mandamus herein issued and dismissing plaintiff’s suit and rejecting his demands at his costs.

. It was later conceded by defendant’s counsel that Act No. 231 of 1934 did not pass by two-thirds vote of the members of both bouses.