SUMMERS, Justice.
 

 The four defendants herein, a white and three Negroes, were jointly charged in a bill of information filed by the District Attorney of Orleans Parish with criminal mischief in that on September 17, 1960, they took possession of the lunch counter at Mc-Crory’s Store, and remained there after being ordered to leave by the manager in violation of the provisions of Title 14, section 59 of the LSA-Revised Statutes of the State of Louisiana, the pertinent portions of which provide:
 

 “Criminal mischief is the intentional performance of any of the following acts:
 

 •%L
 
 >}i i]c
 
 %
 
 í}í
 

 (6) Taking temporary possession of any part or parts of a place of business, or remaining in a place of business after the person in charge of such business or portion of such business has ordered such person to leave the premises and to desist from the temporary possession of any part or parts of such business.”
 

 The defendants entered McCrory’s store in New Orleans on the morning in question and took seats at one of the counters therein. McCrory’s is part of a national chain operating in thirty-four states, owned by McCrory Stores, Incorporated. The New Orleans establishment is classified as a “variety merchandise” type store, made up of approximately twenty departments and open to the general public. Included in its services to the public are eating facilities composed of a main restaurant that seats 210, a counter for colored persons that seats 53, a refreshment bar that seats 24, and two stand-up counters.
 

 The defendants were refused service at the counter where they were seated and which was reserved for whites, the manager was called, the counter was closed, and the defendants were requested to leave — in accordance with the policy of the store, fixed and determined by the manager in catering to the desires of his customers — or to seek service at a counter in the store providing service for Negroes. Upon their refusal, the police, who had been summoned by the manager, arrested them. They were subsequently tried and convicted of having violated the foregoing statute.
 

 Defendants filed a motion to quash, motion for a new trial and a motion in arrest of judgment, all of which were overruled,
 
 *963
 
 and objected to the refusal of the Court to permit the introduction of certain evidence to which bills of exceptions were reserved.
 

 These motions and bills of exceptions pertain primarily to the contention of defendants that the statute under which they were convicted, in its application against Negroes, is unconstitutional and discriminatory in that it denies to them the guarantees afforded by the Due Process and Equal Protection Clauses of the Constitution of the United States and the Constitution of the State of Louisiana, particularly that afforded by the Fourteenth Amendment to the Constitution of the United States.
 

 There should be no doubt, and none remains in our minds, about the applicability of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the state rather than private persons. The second sentence contains the phrases, “No State shall make or enforce any law * * * ” and “nor shall any State deprive any person * * * ; nor deny to any person * *
 

 Since the decision in the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 21, 27 L.Ed. 835, it has been unequivocally understood that the Fourteenth Amendment covers state action and not individual action. Mr. Justice Bradley, speaking for the majority in these cases, stated:
 

 “The first section of the fourteenth amendment, — which is the one relied on, — after declaring who shall be citizens of the United States, and of the several states, is prohibitory in its character, and prohibitory upon the states.
 

 “It is state action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the amendment.”
 

 The foregoing concrete language indicates emphatically that positive action by state officers and agencies is the contemplated prohibition of the amendment. 43 Cornell L.Q. 375. Mir. Justice Bradley further stated that the wrongful act of an individual is not state action “if not sanctioned in some way by the state, or not done under state authority, * * *.” This proposition has been constantly reiterated by the highest court of our land. In Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 842, 92 L.Ed. 1161, it was stated thusly: “Since the decision of this Court in the Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.”
 

 We are, therefore, called upon to determine whether the enactment of the
 
 *965
 
 questioned statute is such action by the State as is prohibited by the Fourteenth Amendment. In this connection it is recognized that the enactment of a statute which on its face provides for discrimination based upon race or color is a violation of the Fourteenth Amendment and constitutes state actions which that constitutional amendment prohibits.
 

 A reading of the statute readily discloses that it makes no reference to any class, race or group and applies to all persons alike, regardless of race. It confers no more rights on members of the white race than are conferred on members of the Negro race, nor does it provide more privileges to members of the white race than to members of the Negro race. Williams v. Howard Johnson’s Restaurant, 4 Cir., 268 F.2d 845. The statute under consideration here stands no differently than does one imposing a penalty upon a person who enters without right the posted lands of another. It is not such a law as would be marked with the characteristic that it has been promulgated by our State for a special design against the race of persons to which defendants belong. To the contrary it is such a law that finds widespread acceptance throughout America. It is a legislative recognition of rights accorded to the owners of property similar to those found in almost all states of our nation. Mr. Justice Black in Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 865, 87 L.Ed. 1313, referring to a statute of Virginia similar in scope to that here involved, said: “Traditionally the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off. General trespass after warning statutes exist in at least twenty states, while similar statutes of narrower scope are on the books of at least twelve states more.”
 

 Not being impressed with features which would mark it as discriminatory and
 
 a fortiori
 
 unconstitutional,
 
 [1]
 
 we conclude that the constitutionality of the statute must be presumed. State v. Winehill & Rosenthal, 147 La. 781, 86 So. 181, writ of error dismissed, 258 U.S. 605, 42 S.Ct. 313, 66 L.Ed. 786; Panama R. R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748; Richmond Screw Anchor Co. v. United States, 275 U. S. 331, 48 S.Ct. 194, 72 L.Ed. 303; State ex rel. Porterie v. Grosjean, 182 La. 298, 161 So. 871; State v. Saia, 212 La. 868, 33 So.2d 665; Schwegmann Bros. v. La. Board of
 
 *967
 
 Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248, 14 A.L.R.2d 680; Olivedell Planting Co. v. Town of Lake Providence, 217 La. 621, 47 So.2d 23; Jones v. State Board of Education, 219 La. 630, 53 So.2d 792; State v. Rones, 223 La. 839, 67 So.2d 99; State v. McCrory, 237 La. 747, 112 So. 2d 432; Michon v. La. State Board of Optometry Examiners, La.App., 121 So.2d 565; 11 Am.Jur., Const.Law, Sec. 97.
 

 Furthermore, courts will not hold a statute unconstitutional because the legislature had an unconstitutional intent in enacting the statute which has not been shown here. Doyle v. Continental Insurance Co., 94 U.S. 535, 24 L.Ed. 148; Daniel v. Family Security Life Ins. Co., 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632; State ex rel. Russum v. Jefferson County Comm., 224 Ala. 229, 139 So. 243; Morgan County v. Edmondson, 238 Ala. 522, 192 So. 274. The courts will test a statute as it stands, without considering how it might be enforced. James v. Todd, 267 Ala. 495, 103 So.2d 19, appeal dismissed 358 U.S. 206, 79 S.Ct. 288; 3 L.Ed.2d 235; Clark v. State, 169 Miss: 369, 152 So. 820. Courts in considering constitutionality of legislation cannot search for motive. Shuttlesworth v. Birmingham Board of Education, D.C., 162 F. Supp. 372, affirmed 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145.
 

 Defendants further assert in their attack upon the statute that by content, reference and position of context it is designed to apply to, and be enforced in an arbitrary manner against, members of the Negro race and those acting in concert with them. In aid of this assertion certain House bills of the Louisiana Legislature for 1960, introduced in the same session with the contested statute were offered in evidence.
 
 [2]
 
 All of these bills did not become law but some did.
 
 [3]
 
 It is declared that this law and the others enacted during the same session were designed to apply to and be enforced against, in an arbitrary manner, members of the Negro race. We have carefully reviewed the provisions of these bills referred to which were enacted into law and nowhere in
 
 their
 
 content or context do we find that any of them seek to discriminate against any class, group, or race of persons. We therefore find no merit in this contention and, accordingly, dismiss it as being unsupported.
 

 But the primary contention here, conceding the constitutionality of the statute on its face, has for its basis that the statute is unconstitutional in its application
 
 *969
 
 and the manager and employees of the store were acting in concert with the municipal police officers who made the arrest, the district attorney in charging defendants, and the court in trying defendants’ guilt; that these acts constitute such state action as is contemplated by the prohibition of the Fourteenth Amendment. We have noted, however, that in order for state action to constitute an unconstitutional denial of equal protection to the defendants here that action must provide for discrimination of a nature that is intentional, purposeful, or systematic. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Charleston Federal Savings & Loan Ass’n v. Alderson, 324 U.S. 182, 65 S.Ct. 624, 89 L.Ed. 857; City of Omaha v. Lewis & Smith Drug Co., 156 Neb. 650, 57 N.W.2d 269; Zorach v. Clauson, 303 N.Y. 161, 100 N.E.2d 463; State v. Anderson, 206 La. 986, 20 So.2d 288; City of New Orleans v. Levy, 233 La. 844, 98 So.2d 210; 12 Am.Jur., Constitutional Law, Sec. 566. Nor is a discriminatory purpose to be presumed. Tarrance v. State of Florida, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572.
 

 The defendants sought to introduce evidence to establish that the action of the manager of McCrory’s was provoked or encouraged by the State, its policy, or officers, and they would have this Court hold that this action of McCrory’s was not its own voluntary action, but was influenced by the officers of the state. The conclusion contended for is incompatible with the facts. Rather, the testimony supports a finding that the manager of McCrory’s had for the past several years refused service to Negroes, that the policy of the store was established by him, that he had set out the policy and followed it consistently; that Negroes had habitually been granted access to only one counter within the store and a deliberately provoked mischief and disturbance such as the one he complained of here had not previously occurred. In the past other Negroes who had mistakenly taken seats at the counter in question and who were told to move had cooperated and recognized the requests of the McCrory’s employees and had sat at the counter set aside for them.
 

 Even under the provision of the questioned statute it is apparent that a prosecution is dependent upon the will of the proprietor, for only after he has ordered the intruder to relinquish possession of his place of business does a violation of the statute occur. The State, therefore, without the exercise of the proprietor’s will can find no basis under the statute to prosecute.
 

 These facts lead us to the conclusion that the existence of a discriminatory design by the State, its officers or agents, or by its established policy, assuming such could have been shown, would have had no influence upon the actions of McCrory’s. The action of bringing about the arrest of the defendants, then, was the independent
 
 *971
 
 action of the manager of the privately-owned store, uninfluenced by any governmental action, design, or policy — state or municipal — and the arrest was accomplished in keeping with McCrory’s business practice established and maintained long before the occasion which defendants seek to associate with a discriminatory design by the State. Furthermore, it is quite clear from the oral argument of defense counsel that this prosecution was sought after and provoked by the defendants themselves, and in reality the conviction they have sustained is the result of their own contrivance and mischief and is not attributable to state action.
 

 The business practice which McCrory’s had adopted was recognized then and is now recognized by us to be a' practice based upon rights to which the law gives sanction. It has been expressed as follows:
 

 “The right of an operator of a private enterprise to select the clientele he will serve and to make such selection based on color, if he so desires, has been repeatedly recognized by the appellate courts of this nation * * * The owner-operator’s refusal to serve defendants, except in the portion of the building designated by him, impaired no rights of defendants.” See State v. Clyburn, 247 N.C. 455, 101 S.E.2d 295, 299, and authorities therein cited. This right of the operator of a private enterprise is a well-recognized one as defendants concede. “The rule that, except in cases of common carriers, innkeepers and similar public callings, one may choose his customers is not archaic.” Greenfield v. Maryland Jockey Club, 190 Md. 96, 57 A.2d 335, 337.
 

 The right to prevent a disturbance on one’s private property and the right to summon law enforcement officers to enforce that right are rights which every proprietor of a business has whenever he refuses to deal with a customer for any reason, racial or otherwise, and the exercise of those rights does not render his action state action or constitute a conspiracy between the proprietor and the peace officer which would result in state action. Slack v. Atlantic White Tower System, Inc., D.C., 181 F.Supp. 124, affirmed, 4 Cir., 284 F.2d 746.
 

 There is presently no anti-discrimination statute in Louisiana, nor is there any legislation compelling the segregation of the races in restaurants or places where food is served. There being no law of this State, statutory or decisional, requiring segregation of the races in restaurants or places where food is served, the contention that the action of the officials here is discriminatory is not well-founded for that action is not authorized by state law.
 

 The defendants have sought to show through evidence adduced at the trial that there is no integration of the races in eating places in New Orleans and, therefore, the custom of the state is one that supports
 
 *973
 
 segregation and hence state action is involved. This argument overlooks the fact that the segregation of the races prevailing in eating places in Louisiana is not required by any statute or decisional law of the State or other governmental body, but is the result of the business choice of the individual proprietors, both white and Negro, catering to the desires and wishes of their customers, regardless of what may stimulate and form the basis of the desires. Slack v. Atlantic White Tower System, Inc., supra.
 

 To the same effect is the language of the Court in Williams v. Howard Johnson’s Restaurant, supra [268 F.2d 847], viz.:
 

 “This argument fails to observe the important distinction between activities that are required by the state and those which are carried out by voluntary choice and without compulsion by the people of the state in accordance with their own desires and social practices.
 

 í|í Í-Í iji ‡ >}«
 

 “The customs of the people of a state do not constitute state action within the prohibition of the Fourteenth Amendment.”
 

 The effect of the contentions of defendants is to urge us to disregard and ignore certain rights of owners and taxpayers in the enjoyment of their property, unaffected by any public interest, in order that they may impose upon the proprietor their own concept of the proper use of his property unsupported by any right under the law or Constitution to do so. We cannot forsake the rights of some citizens and establish rights for others not already granted by law to the prejudice of the former; this is a legislative function which it is not proper for this court to usurp. Tamalleo v. New Hampshire Jockey Club, Inc., 102 N.H. 547, 163 A.2d 10. The fundamental propositions presented here are not novel; we treat them as settled and their change is beyond our province.
 

 The conviction and sentence are affirmed.
 

 [1]
 

 . Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149; Flemming v. South Carolina Electric & Gas Co., 4 Cir., 224 F.2d 752, appeal dismissed, 351 U.S. 901, 76 S.Ct. 692, 100 L.Ed. 1439; Browder v. Gayle, D.C., 142 F.Supp. 707, affirmed, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114; Evers v. Dwyer, 358 U.S. 202, 3 L.Ed.2d 222, 79 S.Ct. 178; Dorsey v. State Athletic Comm., D.C., 168 F.Supp. 149, appeal dismissed and certiorari denied, 359 U.S. 533, 79 S.Ct. 1137, 3 L.Ed.2d 1028.
 

 [2]
 

 . See Official Journal of the Proceedings of the House of Representatives of the State of Louisiana, 23rd Regular Session, 1960; House Bills 343-366, inclusive.
 

 [3]
 

 . See Acts 68, 69, 70, 73, 76, 77, 78, 79, and 81, LSA-R.S. 14:126.2, 14:34.1, 14:103.1, 14:103, 14:79.1, 14:108, 14:59, 14:63.3, 14:63.4, 14:126.1, representing the only House Bills referred to in Footnote 2, which were enacted by the Legislature.