135 So.2d 915

**KANSAS CITY SOUTHERN RAILWAY COMPANY**

**v.**

**James S. REILY, Collector of Revenue, State of Louisiana.**

No. 45708.

Dec. 11, 1961.

Rehearing Denied Jan. 15, 1962.

Wilkinson, Lewis, Madison & Woods, John C. Christian, Schober & Newstadt, Shreveport, for plaintiff-appellant.

Emmett E. Batson, Chapman L. Sanford, Frederick S. Haygood, Levi A. Himes, John B. Smullin, Baton Rouge, for defendant-appellee.

FOURNET, Chief Justice.

The appellant, Kansas City Southern Railway Company, having paid under protest certain additional corporation franchise taxes for the years 1951, 1952, 1953, and 1954, plus interest thereon, following an audit of its returns for those years and resultant demand for additional payments by the Collector of Revenue for the State of Louisiana, and availing itself of the remedy at law in such case afforded by R.S. 47:1576, instituted this suit against the Collector for the recovery of the amounts paid, protesting four separate items upon which the additional tax was claimed. The instant appeal[1] is from an adverse judgment on one of the items,[2] in amount of $30,383.66, involving a computation of the tax in accordance with the provisions of R.S. 47:606B—the District Court having rejected plaintiff's attack on the constitutionality, as applied to it, of those provisions.

The facts are not in dispute. The Kansas City Southern Railway Company,

1. Jurisdiction of the appeal is vested in this Court since the constitutionality of a "tax * * * levied by the state" was contested. Louisiana Constitution of 1921, Article 7, Section 10(1).
2. Judgment was rendered in favor of plaintiff as to two items; as to the remaining two, the plaintiff's demands were rejected. The Collector did not appeal from that portion of the judgment adverse to him, and plaintiff does not complain with respect to one item on which the Collector prevailed, so that the appeal is limited to the remaining item.

generally known as "the KCS" and so referred to herein, is a foreign corporation organized and existing under the laws of the State of Missouri, where its home office is maintained; it is an operating railway company engaged in interstate commerce between the states of Missouri, Kansas, Oklahoma, Arkansas, Texas and Louisiana, with its main line track extending from Kansas City, Missouri, southward through Shreveport and Lake Charles, Louisiana, to its terminus at Port Arthur, Texas. The KCS owns all of the outstanding capital stock and bonds in three other corporations which do business in Louisiana—(a) the Louisiana & Arkansas Railway Company, a Delaware corporation engaged in transporting passengers, freight, mail and express between the states of Texas, Arkansas and Louisiana, the main line of which joins the KCS at Shreveport and continues southeastward through Alexandria and Baton Rouge to New Orleans; (b) the Kansas City Southern Transport Company, Inc., a Louisiana corporation engaged in the transportation of freight by motor carrier in interstate commerce between the states served by the KCS railroad; (c) the Kansas City, Shreveport and Gulf Terminal Company, a Louisiana corporation which owns and operates the Union Depot Terminal in Shreveport. The franchise taxes due Louisiana by these corporations were paid in due course. The said stocks and bonds, representing plaintiff's investments in and advances to the three corporations named above, are physically located in the State of New York.

The Louisiana Corporation Franchise Tax, embodied in the Revised Statutes of 1950 as R.S. 47:601 et seq., is imposed annually on a corporation, domestic or foreign, as an excise "for the privilege of carrying on or doing business, the exercising of its charter or the continuance of its charter" within Louisiana (R.S. 47:601); according to provisions in effect during the taxable years in question, the rate of $1.50 was imposed for each $1,000.00 or major fraction thereof on the amount of a corporation's "capital stock, surplus, undivided profits, and borrowed capital"— this taxable capital to be determined by the corporation according to definitions in succeeding sections (R.S. 47:602–605), then used as a basis for computing the franchise tax according to a formula for allocating taxable capital, thus arriving at the extent of the use of the franchise in this State. According to this "General allocation formula" (R.S. 47:606A), " * * * every corporation subject to the tax is deemed to have employed in this state the proportion of its entire issued and outstanding capital stock, surplus, undivided profits and borrowed capital, computed on the basis of the ratio obtained by taking the arithmetical average of the following ratios: (1) The ratio that the net sales and other revenues attributable to Louisi-

ana bears to the total net sales and other revenue * * * (2) The ratio that the value of all the taxpayer's property and assets situated or used in Louisiana bears to the value of all of its property and assets wherever situated or used * * *." Thus, the ratios so obtained are averaged and the resulting percentage applied to the taxable capital to determine the amount thereof employed in Louisiana. The provision with which we are here particularly concerned (R.S. 47:606B) declares, under the subtitle "Allocation of intercompany items," that for the purpose of the said general allocation formula, "investments in, advances to, or revenues from a * * * subsidiary corporation shall be allocated to Louisiana on the basis of the percentage of capital employed in Louisiana for corporation franchise tax purposes by the * * subsidiary corporation. * * *."[3] Thus, if a corporation owns, in addition to its other assets within and without Louisiana, the majority of the capital stock in a corporation which has a 60% ratio for Louisiana corporation franchise tax purposes, then 60% of its investment in the subsidiary, and 60% of its revenues from the subsidiary, must be included in the Louisiana assets used to determine the ratio of Louisiana assets to total assets as required under the general allocation formula.

The particluar assessment contested in this appeal was an outgrowth of the application of the corporation franchise tax ratios for the three subsidiaries covering the years 1951 and 1952; those ratios were, for the respective years, (a) for Louisiana and Arkansas Railway Company, 73.3185% and 70.9843%; (b) for Kansas City Southern Transport Company, 55% and 57.9%; (c) for Kansas City, Shreveport and Gulf Terminal Company, 100% and 100%. Applying the provisions of the statute, the Collector allocated to Louisiana, on the basis of the above ratios and for the purpose of determining the ratio of plaintiff's assets applicable to Louisiana, the appropriate proportion of plaintiff's investments in and advances to said subsidiaries, and the appropriate proportion of the revenues derived from the stocks and bonds of the said subsidiaries.

The plaintiff-appellant contests this additional tax on the ground "that its legal domicile, and hence the legal situs of the intangibles, is in the State of Missouri; that the Collector of Revenue has not proved that the KCS has established a 'commercial domicile' in the State of Louisiana; that the Collector of Revenue has not

---

3. A subsidiary corporation is defined in the same subdivision (R.S. 47:606B) as "any corporation the majority of the capital stock of which is actually, wholly or substantially owned by another corporation and whose management, business policies and operations are, howsoever, actually, wholly or substantially controlled by another corporation; * * *."

proved that the intangibles are used as an integral part of appellant's business in Louisiana so as to acquire a 'business situs' here. Hence, the intangibles and the revenue therefrom are beyond the taxing jurisdiction of the State of Louisiana, and an allocation formula through which such intangibles and income therefrom are subjected to a tax, or through which such intangibles and the income therefrom are used as a measure of tax, constitutes a taking of the property of The Kansas City Southern Railway Company without due process of law in violation of Article 1, Section 2 of the Constitution of the State of Louisiana and the Fourteenth Amendment to the Constitution of the United States."

▮ It is well to state here that one who attacks a formula of apportionment of income prescribed by a statute imposing a tax on corporations doing business both within and outside the state has the burden of showing, by "clear and cogent evidence," that the formula results in the unconstitutional taxation of extraterritorial values. Butler Brothers v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991; Norfolk & W. R. Co. v. State of North Carolina, 297 U.S. 682, 56 S.Ct. 625, 80 L.Ed. 977.

▮▮ The value or worth of the privilege of doing business in the taxing state need not be limited to the value of the tangible assets owned or used by the taxpayer therein, and it is well settled that a state may, within certain limits measure or compute the amount of an excise or franchise tax upon a foreign corporation with reference to assets or income which would be immune to a direct property tax. Thus, while the legal situs of intangibles for tax purposes is normally regarded as the domicile of the owner, the courts usually have upheld the propriety of including intangible property in determining the base upon which a franchise tax on a foreign corporation is to be computed—sometimes on the theory of a business situs having been acquired in the taxing jurisdiction, sometimes on the reasoning that, a franchise tax being an excise and not an ad valorem tax, there is no extraterritorial exertion of the taxing power involved in including property located in other states in measuring a tax imposed upon a privilege. See 131 A.L.R. at 940, Anno., Franchise tax, inclusion of intangibles; 51 Am.Jur. 770, 771, Verbo Taxation, Secs. 863, 864.

▮ The principles which control the inquiry in that respect have been declared by the United States Supreme Court, which has said that a statute calling for a "method of allocation" which is "fairly calculated" to assign to the taxing state that portion of the net income, capital, or other item upon which the amount of the tax is based, "reasonably attributable" to the busi-

ness done there, meets any standards required by the due process clause of the Federal Constitution. See Butler Bros. v. McColgan, supra, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 and cases cited in 86 L. Ed. at 996. The power of a state to include in the measure of an excise tax upon a foreign corporation intangible assets having some relationship to the franchise exercised within the state was recognized in Bass, Ratcliff & Gretton v. State Tax Commission, 266 U.S. 271, 45 S.Ct. 82,[4] 69 L.Ed. 282. A similar levy[5] was upheld in Ford Motor Co. v. Beauchamp, 308 U. S. 331, 60 S.Ct. 273, 84 L.Ed. 304, and in the course of its opinion the Court aptly observed: " * * * The exploitation by foreign corporations of intrastate opportunities under the protection and encouragement of local government offers a basis for taxation as unrestricted as that for domestic corporations. In laying a local privilege tax, the state sovereignty may place a charge upon that privilege for the protection afforded. * * * In a unitary enterprise, property outside the state, when correlated in use with property within the state, necessarily affects the worth of the

privilege within the state. Financial power inherent in the possession of assets may be applied, with flexibility, at whatever point within or without the state the managers of the business may determine. * * * The weight, in determining the value of the intrastate privilege, given the property beyond the state boundaries is but a recognition of the very real effect its existence has upon the value of the privilege granted within the taxing state. * * *" (60 S.Ct. at 275, 84 L.Ed. at 306) See, also, Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193, 112 A.L.R.2d 293. And in National Leather Company v. Commonwealth of Massachusetts, 277 U.S. 413, 48 S.Ct. 534, 72 L.Ed. 935, the plaintiff, a Maine corporation which conducted its leather business wholly in Massachusetts, owned the entire capital stock of two other Maine corporations which operated tanneries in the taxing state and whose activities the taxpaying corporation made use of as an essential part of its business; the taxpayer challenged the inclusion in the measure of an excise tax upon it, a foreign corporation, of the value of its stock in the sub-

---

4. In that case a tax was laid for the privilege of doing business in New York determined, for corporations which did not transact all their business within that state, by a percentage of that part of the net income which is calculated by the proportion which the aggregate of specified classes of property within the state bears to all the property of the corporation.

5. An annual franchise tax was imposed on all corporations authorized to do business in the State (Texas), measured by a graduated charge upon such proportion of the outstanding capital stock, surplus, and undivided profits of the corporation, plus its long-term obligations, as the gross receipts of its state business bear to the total gross receipts from its entire business.

sidiary companies on the assumption that the situs of the stock followed the domicile of the owner; but the Supreme Court held that Massachusetts was free to use the stock for the calculation of the local tax as part of the "corporate excess" [6] employed by the corporation within the state, notwithstanding the fact that such intangibles had no situs in the taxing state which would have brought them within its jurisdiction for the purpose of imposing a direct property tax.

There is no merit in plaintiff's contention that R.S. 47:606B, "even though styled a 'franchise tax,' contravenes the constitutional prohibitions against extraterritorial taxation, in that it allows the Collector of Revenue to reach indirectly by an allocation formula, intangible property of the taxpayer which cannot be reached directly," since "the name given a tax does not control" and intangibles "may be taxed only at their situs, the legal domicile of their owner," in the absence, as here, of one of the "recognized exceptions" (i. e., the establishment by the corporation of a "commercial domicile" in the taxing state or the acquisition of a "business situs" therein by the intangibles). We agree with the District Court's ruling that "it is im-

material whether or not the taxpayer has established a legal or commercial domicile or a business situs of the intangibles in Louisiana; nor is it necessary that the certificates representing the investment in stocks and bonds of the subsidiaries be located or used within Louisiana," citing as authority Arkansas Fuel Oil Corporation v. Fontenot, decided by this Court in 1954.[7] That case is clearly decisive of the point. The plaintiff there, a Delaware corporation, had its principal office in Louisiana but functioned here simply as a holding company, possessing few assets within the state; two of its wholly owned subsidiaries. (chartered in other states) did business here as well as elsewhere. All had paid taxes computed under provisions of R.S. 47:606A. The parent company, in resisting a substantial additional assessment brought about by application of provisions of R.S. 47:606B, contended that because (a) interest and dividends received by it from the other corporations were not revenues "attributable to Louisiana," and (b) the amounts of its investments in and advances to those corporations were not property and assets situated in Louisiana, the Collector, in allocating to Louisiana a proportion thereof, had made a determination

6. The franchise tax was levied on the "corporate excess" employed within Massachusetts, said excess being defined as "such proportion of the fair cash value of all the shares constituting the capital stock * * * as the value of the as-

sets, both real and personal, employed in any business within the commonwealth * * * bears to the value of the total assets of the corporation."

7. 225 La. 166, 72 So.2d 465, cert. den., 348 U.S. 804, 75 S.Ct. 46, 99 L.Ed. 635.

of tax liability contrary to the provisions of the statute, and hence there resulted an unlawful exaction—with an alternative plea of unconstitutionality of the statute as violative of due process and other guarantees of the Federal and State Constitutions. In rejecting plaintiff's argument that the allocation of "intercompany items" to Louisiana, under Section 606, Subd. B [now R.S. 47:606B], "is merely a limitation on the amount of assets actually situated or used in Louisiana which can be allocated to Louisiana under Section 606, Subd. A," the Court significantly observed: "This could not be the meaning of this provision [Subd. B] *as the location of the assets of the corporation is of no importance in this statute except insofar as the value of the assets situated within and without Louisiana are used in determining one of the ratios under Section 606, Subd. A.* It is not the actual capital employed in the State of Louisiana but the proportion of the entire 'taxable capital' which is allocated to Louisiana, as capital employed in Louisiana, that the tax rate is applied to." (225 La. at 184, 72 So. 2d at 471—emphasis supplied.)[8] And while it is true we made a specific finding that

the taxpayer had established its commercial domicile in Louisiana, this came about through the plaintiff's allegation that it did not actually engage in or transact any business in Louisiana, and was a pronouncement by the Court in support of the Collector's position that Delaware was merely the incorporating or qualifying state of plaintiff, where none of its operations were conducted and none of the intangibles were used in connection with its business; that rather, its business activities were here in Louisiana and the intangibles were used here in connection with those activities. But the language quoted above shows that this finding was not the controlling consideration, and therefore plaintiff's reliance on that case as upholding the proposition for which it now contends is misplaced.

For the reasons assigned, the portion of the District Court's judgment rejecting plaintiff's demand for the return of the sum of $30,383.66, representing the tax deficiency and interest thereon paid under protest to the Collector of Revenue as a result of the application of provisions of R.S. 47:606B, is affirmed.

8. A succinct observation on this form of taxation, made in connection with a comment on the Arkansas Fuel Oil case, is that "A corporation which determines to operate through the agency of subsidiaries must be presumed to have sound and economically desirable ends in view. For the right it confers upon the corporation to exploit these advantages a state must be accorded the right to exact tax revenue in return." Charles A. Reynard, State and Local Taxation (a section of the symposium on the work of the Louisiana Supreme Court, 1953–54 term), 15 La.L.Rev. 337, at 339, 340.