CPIRIS T. BARNETTE, Judge pro tem.
These cases present identical questions and were consolidated for the purpose of trial and have been consolidated in this Court for the purpose of briefing and argument. One opinion will suffice and will apply equally in both cases.
Appellants are wholesale liquor distributors in the City of New Orleans holding Louisiana wholesale liquor permits for a number of years including 1962. Appellant Reynolds, doing business under the name of Larry and Katz, also holds a retail *59 liquor license and operates a retail liquor store at an address other than that for which his wholesale permits were issued. He makes no sales to retail stores other than that owned and operated by himself. Appellants Schwegmann own stock in a corporation which operates six supermarkets for retail sales of groceries, meats, produce, and numerous other items including alcoholic beverages. In connection with these sales Schwegmann Brothers Giant Super Markets holds retail liquor licenses for its several retail stores. The wholesale liquor business conducted by these appellants is restricted to distribution and sales of liquor exclusively through the affiliated retail stores owned and controlled by them.
The defendant-appellee, Louisiana Board of Alcoholic Beverage Control, refused to issue 1963 Wholesale Liquor Permits to appellants for the alleged failure of appellants to meet certain requirements set forth in LSA-R.S. Title 26, known as “The Alcoholic Beverage Control Law,” as amended by Act 463 of 1962, and especially Section 80, Subsection D, in the following particulars as set forth in a registered letter of November 21, 1962, addressed to each appellant, stating as follows:
“Your application for a 1963 Wholesale Liquor Permit is being withheld and denied by the Louisiana Board of Alcoholic Beverage Control for the reason that you cannot qualify under R.S. 26:80(D) in that your operation does not maintain sales of liquor to retailers generally within your immediate trade area; in that your operation does not make sales of liquor to at least twenty (20%) per cent of the retailers in your area; and in that your operation does not have separate sales of liquor to retailers accounting for at least fifty (50%) per cent of the gallonage handled by you.”
The letters to each applicant were identical except that the letter to the Schwegmanns contained the additional statement:
“ * * * and, finally, in that you store wholesale liquor stock on the premises of a retail establishment.”
By stipulation of facts filed in the record, it is agreed that appellants have not violated any legislation or Board regulation at any time prior to the effective date of the act in question and that they meet all the requirements for issuance of a wholesale permit except some of those added by Subsection D of Section 80 of LSA-R.S. Title 26; these provisions having been added by Act 463 of 1962. It is for these reasons, and only these reasons, as the foregoing letter indicated, that their permits have been withheld and denied.
Section 80, Subsection D of LSA-R.S. Title 26 was added by Act 463 of 1962 and provides as follows:
“D. No wholesale permit shall be issued or held after issuance by any person unless at all times throughout the license year he meets the standards set forth as follows:
“(1) Maintains warehouse space either owned or leased by the wholesaler, or dedicated to his use in a public warehouse and such space shall be sufficient to store at one time either:
“(a) A stock of liquor equal to ten per cent or more of the wholesaler’s annual case volume of liquor sales to retailers within this state, or
“(2) Maintains at all times in the warehouse a stock of liquor owned by him, not consigned, nor then sold, consisting of not less than 5% of his annual sales to retailers, and whose cost of acquisition is fifty thousand dollars or more;
“(3) Maintains delivery equipment which shall be leased, owned or dedicated to his use ;
“(4) Maintains brand representation with at least one distillery, or liquor manufacturer;
*60 “(5) Maintains sales of liquor to retailers generally within his immediate trade area, making sales to at least 20% of the retailers in said area with separate sales to retailers accounting for at least 50% of the gallonage handled by him.
“E. No wholesale permit shall be issued or held after issuance by any person who does not in good faith actually carry on or intend to carry on a bona fide wholesale business by sale to retail permittees of the alcoholic beverages on hand, and the board may revoke any wholesale permit when the permittee fails for a period of 45 days actively and in good faith to engage in the wholesale business, and shall revoke any wholesale permit for any other violation of this Sub-section or the rules and regulations adopted pursuant to the enforcement hereof.[1]
“F. Sale by a wholesaler to himself as a retailer, or as a partner in a retail establishment is not a bona fide wholesale transaction. No wholesaler shall store any of his stock on the premises of any retail establishment.
“G. Persons engaged primarily in the sale, handling, distribution, and storage of alcoholic beverages which are ultimately delivered or transported beyond the borders of the state are exempt from complying with the standards above set forth.
“H. The board may adopt and publish rules and regulations for the enforcement of this section. Added Acts 1962, No. 463, § 6.”
Appellants have attacked the constitutionality of Act 463 of 1962, particularly the foregoing Subsection D, and seek injunctive relief against the enforcement of the provisions thereof enjoining the defendant from' refusing to issue to them wholesale liquor permits on account of alleged failure to meet the so-called standards enumerated in-said Subsection D. From a judgment against them dismissing their suits at their costs, they have appealed.
Act 463 of 1962, amending several' sections of LSA-R.S. Title 26, covers a. number of subjects in addition to that in Section 80, Subsection D. Appellants question the constitutionality of the act on this-account contending that it is in contravention of LSA Constitution, Article III, Section 16, restricting legislation to embrace-but one object. This attack is without merit and appellants have not pursued it in briefs and argument. Furthermore a discussion of this point is not necessary to a decision of the more serious questions before us. Neither do we find it necessary to-discuss the question of constitutionality of Section 9 of the act amending LSA-R.S. 26:106, which limits the injunctive jurisdiction to cases in which certain administrative remedies have first been exhausted. Accordingly we have confined our opinion to the question of constitutionality of Section 6 of the act and more particularly Subsection D thereof, cited as LSA-R.S. 26:80, Subsection D.
Unless appellants have been denied some constitutional right by the application of the law to them, they have no right or cause of action for complaint, and it would be unnecessary to consider whether or not the act is within the reasonable exercise of the police power of the state.
That they do have a constitutional right to engage in the wholesale liquor business on an equal and nondiscriminatory basis with other persons has been clearly *61 settled by our Supreme Court in Schwegmann Bros. v. Louisiana Board, etc., 216 La. 148, 43 So.2d 248, 14 A.L.R.2d 680 (1949), and any denial or limitation of that right is an unconstitutional invasion of such right unless it can be justified as a reasonable exercise of the police power of the state.
In Schwegmann Bros. v. Louisiana Board, etc., supra, the Board of Alcoholic Beverage Control vigorously argued that the plaintiff had no inherent right to engage in the liquor business and had no right to attack the statute as unconstitutional. It contended, as in the instant case, that the statute grants a privilege, subject to such limitations as the state may see fit to impose from time to time. In answer to this argument the Supreme Court said in that case at pp. 252-253 of 43 So.2d:
“ * * * They argue: ‘Matters which are considered as rights when applied to other circumstances under different conditions, cease to be rights and become mere conditions of the privilege when applied to the liquor traffic, because, first, no one has an inherent right to engage in the liquor traffic, and second, he is free to accept or renounce the conditions by accepting or refusing the license. Having voluntarily accepted the license, he is no longer free to renounce the conditions.’
“Further, they say:
“ ‘Going one step further, not only has no man an inherent right to sell intoxicating liquors, but he has neither property rights, contract rights, nor vested rights in his license, once obtained.
“ ‘Actually, the only right a citizen has with reference to the sale by him of intoxicating liquors is his right to comply with the statute and to enforce compliance with the statute as against arbitrary administration of the statute by administrative bodies. In other words his sole right is the right to demand and retain such rights as are granted in the statute, upon a showing of non-compliance, or arbitrary abuse, on the part of the administering authority.’
“And in support of the arguments they cite and quote from numerous decisions (of this court and courts of other jurisdictions) including Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620; City of New Orleans v. Smythe, 116 La. 685, 41 So. 33, 6 L.R.A.,N.S., 722, 114 Am.St.Rep. 566; State ex rel. Orleans Athletic Club v. Louisiana State Boxing Commission, supra, [163 La. 418, 112 So. 31], and State v. Morton, 182 La. 887, 162 So. 718. These cases are authority for the universally accepted propositions that there is no inherent right in a citizen to sell intoxicating liquor; that under the police power of the state the liquor business may be entirely prohibited, or it may be regulated within the discretion of the governing authority under such conditions as will limit to the utmost the evils associated therewith ; and that liquor licenses are neither contracts nor rights of property. But we do not understand them to hold, as appellants insist they do, that the granting of a privilege to engage in the liquor traffic can be made to depend on conditions which violate any and all constitutional guaranties. If such were the law there could never be an unconstitutional statute dealing with the liquor traffic. Certainly that was not the holding in Crowley v. Christensen, supra [137 U.S. 86, 11 S.Ct. 16 [sic]], on which appellants principally rely, * * *
“Our appreciation of the law is that even though a state has the authority to grant or deny a privilege subject to conditions, which a person is free to accept or reject, its power in that respect is not unlimited. It may not through an abuse of its police power impose conditions which require the *62 relinquishment of constitutional rights. And this limitation applies to the liquor traffic, notwithstanding that the state has the right to suppress it entirely or may, in curbing the attendant evils, impose regulations on it more stringent than on other businesses. When the liquor traffic is lawful, as it now is, all regulations provided therefor must be pursuant to a legitimate exercise of the state’s police power, which includes the respecting of constitutional guaranties. Supporting this view is State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999, 1002, 67 L.R.A. 70, 2 Ann.Cas. 92, in which this court said:
“ ‘It is wholly immaterial, for the purposes of the question presented, that it has been held that the right to sell intoxicating liquors is not inherent in a citizen of a state or of the United States (Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620), and equally immaterial that in another state it has been held that such right is derived from the common law (Welsh v. Indiana [126 Ind. 71], 25 N.E. 883, 9 L.R.A. [664], 666), since in Louisiana it is a right conferred by the written law of the state, the enjoyment of which is subject to such conditions only as may be imposed or authorized by the General Assembly in the legitimate exercise of the police power of the state.’ ”
Appellants have raised the issue of unfair discrimination and point to the above-quoted part of the act which excepts from its provisions a class of liquor wholesalers, commonly referred to as “border houses,” meaning those persons engaged in wholesale distribution of liquor for transportation out of the state. The term “border houses” comes from the fact that most of these dealers are located near the state line for sale of liquor for transport into the State of Mississippi. Furthermore they contend that the act was conceived and enacted for the exclusive purpose of making their continued wholesale operations legally impossible. However obvious the motive of those who proposed and sponsored the passage of the act, it is not for us to question the motive of the Legislature in enacting it. State v. Goldfinch, 241 La. 958, 132 So.2d 860 (1961) ; Fireside Mut. Life Ins. Co. v. Martin, 223 La. 583, 66 So.2d 511 (1953); State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72 (1935).
 We can find no basis for holding the act or the section complained of (LSA-R.S. 26:80, Subsection D) unconstitutional upon the ground of discrimination since it applies equally to all persons who come within a common class. The exception of the so-called “border houses” is an exception of a class or particular kind of wholesaler, not common to the class of wholesalers to which appellants belong. Laws must not be oppressive or discriminate arbitrarily between persons of the same class. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957) ; Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948) ; Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 48 S.Ct. 423, 72 L.Ed. 770 (1928). We repeat, the motive behind the legislation cannot be questioned if it is otherwise a valid exercise of legislative will and applies to all persons of the same class equally. On its face the law in question does that.
Having found under the authority of the Schwegmann case that appellants do have a right and cause of action in the instant case, we must now apply the standard test so well laid out in that case to determine if the act in question is a reasonable exercise of the police power of the state.
Unquestionably the subject of the act having to do with regulation and control of the liquor traffic is a proper one for legislative concern, and we can find no fault with the following portions thereof which appear to have a direct relationship *63 to the object of the act and to be in the public interest:
1. Section 1, amending LSA-R.S. 26:2(9) defining liquor wholesalers and requiring them to meet certain “standards” set forth in the law. (Assuming the standards required are reasonable.)
2. Section 2, amending LSA-R.S. 26:74 requiring dealers to have permits.
3. Section 3, amending LSA-R.S. 26:75 requiring permits to be posted in a conspicuous place.
4. Section 4, amending LSA-R.S. 26:78 regarding applications and probationary periods of operation.
5. Section 5, amending Subsection A of LSA-R.S. 26:79 relative to disqualification of spouse of permittee whose permit has been denied or revoked.
6. Section 6, insofar as it amends Subsection B of LSA-R.S. 26:80 regulating locations of retail liquor sales.
7. Section 7, amending LSA-R.S. 26:81 relative to persons interposed for owner of a liquor business.
8. Section 8, amending LSA-R.S. 26:88 relative to solicitation for prostitution on licensed premises and prohibiting sale, possession or consumption of narcotics on licensed premises.
9. Section 9, amending LSA-R.S. 26:106 relating to injunctive remedies.
10. Section 10, amending LSA-R.S. 26:163 requiring permits as condition precedent for purchase of liquor by retailers.
Sandwiched in between these very proper and valid regulatory measures in Section 6 is the amendment adding to LSA-R.S. 26:80 a new subsection which is given the letter D. This is the subsection which purports to set the “standards” mentioned in the foregoing Section 1 of the act. It is this Subsection D which presents the only serious question in this case. We must now determine if it comes within the limits of reasonable exercise of the police power of the state. In seeking an answer to the question, we turn again to the opinion of the Supreme Court in Schwegmann Bros. v. Louisiana Board, etc., supra, and quote from pp. 257-258 of 43 So.2d:
“Returning to the position of appellants [appellees here] herein, it is indisputable that tire liquor traffic can be regulated, even prohibited, by the valid exercise of the police power, the regulating thereof being essential to the general health, peace, good order, and morals of the people. Further, it must be observed that the announced object or purpose of Act 360 of 1948 [The same act in question here as amended and which is now LSA-R.S. Title 26.], is to regulate and control, under the police power, all traffic of alcoholic beverages containing more than six per centum of alcohol by volume. This is clearly stated in a preamble, immediately preceding the enacting clause, reading: ‘Whereas, it is deemed necessary for the protection of the safety, welfare, health, peace and morals of the people of the State that all traffic in alcoholic beverages containing more than six per centum of alcohol by volume be regulated and controlled, and that the police power of the State be exerted so that the said traffic may not cause injury to the economic, social and moral well-being of the people of the State, now therefore.’
“Now, in applying the above test, the following questions must be answered: Is there a real and substantial relation between the mandatory minimum mark ups [in this case standards for liquor wholesaler] of the statute and the preventing of injury to the economic, social and moral well being of the people of the state ? Are those means (the mark ups) [standards set out in Subsection D] reasonably necessary and appropriate for the accomplishment of *64 the legitimate object or purpose which the statute announces (regulation and control of the traffic) ? ”
Appellee has argued that the right to engage in the wholesale liquor business in the State of Louisiana is not an inherent right, but rather a privilege conferred by the state. From this premise it is contended that the state, having the right to prohibit, has the right to control. In other words, the greater (authority) includes the lesser. This is a thoroughly sound principle, but the unlimited application of it, which appellee now contends for, has already been rejected by our Supreme Court. Appellee contends in its brief:
“This Court need read but one case decided by the United States Supreme Court and dismiss the argument advanced by appellants that state legislation affecting the liquor traffic within its bounds is subject to the ordinary federal constitutional provisions. Again, the land mark case so forgotten in appellants’ brief is called to the Court’s attention. Crowley v. Christensen, supra [137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620]. This often cited case held that the federal constitutional guaranties against abridging the privileges and immunities of citizenship, equal protection of the law, due process of law, and impairing the obligations of contract, do not apply to state regulation of liquor traffic similar to their application to other fields of business endeavor. See also Bartemeyer v. Iowa, supra [18 Wall. 129 (85 U.S.) 21 L.Ed. 929] ; Manchester Press Club v. State Liquor Com., supra [89 N.H. 442, 200 A 407, 116 ALR 1093].”
This argument was supported by Justice McCaleb in his dissenting opinion in the Schwegmann case but rejected by the majority opinion.[2]
This contention was also made an issue in Hornsby v. Allen, 326 F.2d 605 (5th Cir. Ga. 1964), and the United States Fifth Circuit Court of Appeals had this to say:
“ * * * Merely calling a liquor license a privilege does not free the municipal authorities [or state] from the due process requirements in licensing and allow them to exercise an uncontrolled discretion. * * * ”
The Court further held in that case that the states do not escape the operation of the Fourteenth Amendment of the Constitution of the United States in dealing with intoxicating beverages by reason of the Twenty-first Amendment, Section 2. Citing other authorities it held that the Twenty-first Amendment, Section 2, did not clothe the states with any greater right in the control of the sale of liquor than it had over other commodities.
We thoroughly subscribe to the belief that there are many social evils inherent in the liquor traffic, and we do not necessarily agree that the regulation of its sale should be put on the same basis with all other commodities. But since it is a lawful business, we hold that the state’s power of control must be exercised within the limits of constitutional guaranties to all persons to engage in such business without unreasonable discrimination. By this we do not mean that discrimination is not in some cases justifiable. The right of the individual to engage in a lawful business must yield to the greater right of the public *65 to be protected in its moral, social, and economic welfare. But there must be a real and substantial relationship between the regulations imposed and the prevention of injury to the moral, social, or economic welfare of the public. We fail to find such relationship in the instant case. For a more thorough discussion of this subject, see Louisiana Wholesale Distributors Ass’n v. Rosenzweig, 214 La. 1, 36 So.2d 403 (1948), and cases there cited.
Appellee relies heavily on Duke Molner Wholesale Liquor Co. v. Martin, 180 Cal. App.2d 873, 4 Cal.Rptr. 904 (1960). Writs were denied by the United States Supreme Court, 364 U.S. 870, 81 S.Ct. 112, S L.Ed. 2d 92. That is a case involving the constitutionality of Rule 28 of the Department of Alcoholic Beverage Control promulgated pursuant to the laws of California. The rule complained of in California set out certain alleged standards for liquor wholesalers which, except for the “border house” exception, is very similar to LSA-R.S. Title 26 :80, Subsection D. In fact the record discloses that consideration was given to the adoption of a similar rule by the Louisiana Board of Alcoholic Beverage Control but that upon legal advice an act of the Legislature was recommended as more likely to stand the test of constitutionality.
We are not bound by the decision in the California case and do not intend to follow it. However, we think it is pertinent to point out that that case reveals the need in California of regulations to combat the potential danger from economically unsound wholesale liquor dealings by financially irresponsible persons. There the main contention of the plaintiffs (four wholesale liquor dealers) was that they did not have sufficient capital to maintain the stock required. Their operations consisted largely of “consignment” orders and the handling of liquor “pre-sold” which did not require as much investment or financial responsibility as wholesalers generally. This was the main emphasis in their case and no evidence was introduced on any other point. The Court held: “The Department is well within its rights to require a high standard of economic stability for those who are to hold wholesale licenses.” Citing Schaub’s, Inc. v. Department of Alcoholic Bev. Con., 153 Cal.App.2d 858, 315 P.2d 459.
We can agree that economic stability and financial responsibility of liquor dealers, both wholesale and retail, are desirable. It is conceivable that such persons in financial difficulty might resort to practices, or fall into the hands of unscrupulous money lenders or racketeers, to the detriment of the public interest.
Legislation reasonably designed to accomplish the legitimate purpose of financial responsibility might very well be a lawful exercise of the state’s police power; but we fail to see how the number of square feet of storage space for the wholesaler’s liquor stock is a legitimate criterion for determining financial responsibility, nor does it relate to other aspects of public health, safety, morals, or general welfare.
We see no relationship between the requirement that the wholesaler own or operate delivery trucks and the object of the law, nor do we see where any public benefit is derived from requiring that brand representation be maintained with distilleries.
The number of customers and extent of the wholesaler’s trade area, the percentage of sales to any given number of customers, and his inventory in volume and cost have no direct or substantial relationship to the protection of the morals, health, safety, economic, or general welfare of the public.
The definition of wholesaler, which this subsection apparently attempts, embraces elements generally associated with wholesalers as distinguished from retailers of commodities, but we fail to see the necessity for this nor how it relates to the declared object of the law, “the protection of the safety, welfare, health, peace and morals of the people of the State.” The mere fact that it relates to liquor wholesalers rather *66 than to wholesalers in general does not in our opinion meet the requirement that it be reasonably .necessary and appropriate for the accomplishment of a legitimate object within the state’s police power. The mere assertion that an act has such relationship does not of itself bring it within the limits of proper exercise of that power. State v. Blake, 170 La. 175, 127 So. 592 (1930), cited with approval in the Schwegmann case.
If the objective of LSA-R.S. 26:80, Subsection D is to insure economically stable and financially responsible wholesale liquor dealers, it could have been accomplished by more direct and appropriate means within constitutional limits.
We fail to find in the so-called standards set forth in Subsection D any legitimate relationship to the declared purpose of the Alcoholic Beverage Control Law (LSA-R.S. Title 26). We do not feel that the object of the law would be accomplished or that the interest of the public would be served in any way by it. In the absence of some protection of the moral, social, or economic welfare of the public to justify Subsection D, it must be held in violation of the "due process of law” provisions of the Fifth and Fourteenth Amendments of the Constitution of the United States and Article I, Section 2 of the Constitution of Louisiana.
Act 463 of 1962 does not contain a severability clause, however, it amends LSA-R.S. Title 26, the source authority of which is Act 360 of 1948 which does contain a severability clause providing:
"Section 85. If any section, sub-section, paragraph, sentence, clause or other part of this Act, for any reason, be declared unconstitutional, invalid, or not legally enforcible, no other part of application of this Act shall be affected thereby.”
We specifically limit this opinion and decree to said Subsection D which is clearly separable.
With full cognizance of the rule of statutory construction which requires us to declare a statute constitutional unless its unconstitutionality is manifest,[3] we hold that Subsection D of Section 80 of Title 26 of Louisiana Revised Statutes, as enacted by Section 6 of Act 463 of 1962, is unconstitutional, null and void.
Accordingly the judgments appealed from are reversed.
In the case bearing docket number 1717, entitled Lawrence J. Reynolds, d/b/a Larry and Katz v. Louisiana Board of Alcoholic Beverage Control, it is now ordered, adjudged and decreed that there be judgment in favor of said plaintiff against defendant permanently enjoining and prohibiting said defendant, its officers, agents, and employees from enforcing the provisions of LSA-R.S. Title 26, Section 80, Subsection D, and from withholding from said plaintiff a wholesale liquor permit on account of any provision of said Subsection D.
In the case bearing docket number 1718, entitled John Schwegmann, Jr., and Paul Schwegmann v. Louisiana Board of Alcoholic Beverage Control, it is now ordered, adjudged and decreed that there be judgment in favor of said plaintiffs against defendant permanently enjoining and prohibiting said defendant, its officers, agents, and employees from enforcing the provisions of LSA-R.S. Title 26, Section 80, Subsection D, and from withholding from said plaintiffs a wholesale liquor permit on account of any provision of said Subsection D.
The defendant, Louisiana Board of Alcoholic Beverage Control, is cast for all cost of this proceeding except such as may be exempt by law, if any.
Reversed and judgments rendered.

. This paragraph and the following three paragraphs as they appear in LSA-R.S. Title 26:80 are identified as separate subsections E, E, G, and H respectively. The official publication of the act over the certificate of the Secretary of State and the photostatic copy of the original filed in evidence do not identify these paragraphs as separate subsections by letter or otherwise. They are all a part of Subsection D.

. Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620 (1890); State v. Morton, 182 La. 887, 162 So. 718 (1935); City of New Orleans v. Smythe, 116 La. 685, 41 So. 33, 6 L.R.A.,N.S„ 722 (1906); 11 American Jurisprudence, verbo, “Constitutional Law”; 30 American Jurisprudence, verbo, “Intoxicating Liquors”; and Ziffrin, Inc. v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939), relied upon by appellee here, were cited or discussed by the Supreme Court in Scbwegmann Bros. v. Louisiana Board, etc., 216 La. 148, 43 So.2d 248, 14 A.L.R.2d 680 (1949).

. Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963); Police Jury of Parish, of St. Charles v. St. Charles Par. Waterworks Dist. No. 2, 243 La. 764, 146 So.2d 800 (1962); State v. Gatlin, 241 La. 321, 129 So.2d 4 (1961).