181 So.2d 377

**Lawrence J. REYNOLDS, d/b/a Larry & Katz and John Schwegmann, Jr., and Paul Schwegmann**

**v.**

**LOUISIANA BOARD OF ALCOHOLIC BEVERAGE CONTROL.**

No. 47762.

Dec. 13, 1965.

Dissenting Opinion Dec. 21, 1965.

Rehearing Denied Jan. 17, 1966.

George A. Bourgeois, Baton Rouge, Sehrt, Boyle & Wheeler, Clem H. Sehrt, Peter J. Butler, New Orleans, for defendant-relator.

Stone, Pigman & Benjamin, Saul Stone, Paul O. H. Pigman, New Orleans, for respondents.

HAMLIN, Justice:

We granted Certiorari (Art. VII, Sec. 11, La.Const. of 1921) in these consolidated cases in order that we might review a judgment of the Court of Appeal (La.App., 173 So.2d 57), which decreed Subsection D of Section 80 of Title 26 of the Louisiana Revised Statutes, as enacted by Section 6, of Act 463 of 1962, unconstitutional, null, and void; ordered, adjudged, and decreed that there be judgment in favor of plaintiff Lawrence J. Reynolds, d/b/a Larry & Katz, and against the defendant, Louisiana Board of Alcoholic Beverage Control (hereinafter designated as the Board), permanently enjoining and prohibiting it, its officers, agents, and employees from enforcing the provisions of LSA–R.S. Title 26, Section 80, Subsection

D, and from withholding from said plaintiff a wholesale liquor permit on account of any provision of said Subsection D; and ordered, adjudged, and decreed that there be judgment in favor of John Schwegmann, Jr., and Paul Schwegmann against the defendant Board, permanently enjoining and prohibiting it, its officers, agents, and employees from enforcing the provisions of LSA–R.S. Title 26, Section 80, Subsection D, and from withholding from said plaintiffs a wholesale liquor permit on account of any provision of said Subsection D. The judgment of the Court of Appeal reversed two separate judgments of the trial court (the matters were consolidated for trial in the trial court, but separate judgments were rendered) which were rendered in favor of the Board; the trial court also dismissed plaintiffs' suits at their costs.

Lawrence J. Reynolds, d/b/a Larry & Katz, and John Schwegmann, Jr. and Paul Schwegmann instituted these proceedings on December 3, 1962. They alleged that

under the provisions of LSA–R.S. 26:80 (D), Act 463 of 1962, the Board had denied them wholesale liquor permits;[1] they prayed that LSA–R.S. 26:80(D) be declared unconstitutional and that they be granted injunctive relief.

Section 1 of Act 463 of 1962 amended and re-enacted Subsection (9) of Section 2 of Title 26 of the Louisiana Revised Statutes of 1950 to define a "Liquor Wholesaler" as follows:

"(9) 'Liquor wholesaler' means any dealer who sells any alcoholic beverage to other licensed liquor wholesale dealers or to licensed retail liquor dealers in the state or who sells alcoholic beverages for delivery beyond the borders of the state in amounts to be fixed by the board, or who imports any alcoholic beverages into the state, and who meets the standards set forth in this Chapter."

Section 6 of Act 463 of 1962 added and enacted Subsection D of Section 80 of

---

1. The following letter was addressed to Lawrence Joseph Reynolds on November 21, 1962:
"Dear Sir:
"Your application for a 1963 Wholesale Liquor Permit is being withheld and denied by the Louisiana Board of Alcoholic Beverage Control for the reason that you cannot qualify under R.S. 26:80(D) in that your operation does not maintain sales of liquor to retailers generally within your immediate trade area; in that your operation does not make sales of liquor to at least twenty (20%) per cent of the retailers in your area; and in that your operation does not have separate sales of liquor to retailers accounting for at least fifty (50%) per cent of the gallonage handled by you."
An identical letter was addressed to John Schwegmann, Jr. and Paul Schwegmann on November 21, 1962; it contained the following clause in conclusion, "and, finally, in that you store wholesale liquor stock on the premises of a retail establishment."

Title 26 of the Louisiana Revised Statutes of 1950; it recites:

"D. No wholesale permit shall be issued or held after issuance by any person unless at all times throughout the license year he meets the standards set forth as follows:

"(1) Maintains warehouse space either owned or leased by the wholesaler, or dedicated to his use in a public warehouse and such space shall be sufficient to store at one time either:

"(a) A stock of liquor equal to ten per cent or more of the wholesaler's annual case volume of liquor sales to retailers within this state, or

"(2) Maintains at all times in the warehouse a stock of liquor owned by him, not consigned, nor then sold, consisting of not less than five (5) per cent of his annual sales to retailers, and whose cost of acquisition is fifty thousand dollars or more;

"(3) Maintains delivery equipment which shall be leased, owned or dedicated to his use;

"(4) Maintains brand representation with at least one distillery, or liquor manufacturer;

"(5) Maintains sales of liquor to retailers generally within his immediate trade area, making sales to at least twenty (20) per cent of the retailers in said area with separate sales to retailers accounting for at least 50% of the gallonage handled by him."

 The Court of Appeal correctly recognized that the sale of alcoholic beverages in Louisiana is a lawful calling. It also correctly recognized that under the police power of the State, Art. XIX, Sec. 18, La.Const. of 1921, such business may be regulated, (State v. Nejin, 140 La. 793, 74 So. 103; City of Bogalusa v. Gullotta, 181 La. 159, 159 So. 309; Ziffrin Inc. v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128), and that such regulations must be pursuant to a legitimate exercise of the State's police power, which includes the respecting of constitutional guarantees (Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248, 14 A.L.R.2d 680). The Court further correctly observed that there must be a real and substantial relationship between the regulations imposed and the prevention of injury to the moral, social, or economic welfare of the public, but concluded that such a relationship does not exist in the instant case between the statute involved and the purpose for which it was enacted. Because of its conclusion, the Court of Appeal found LSA–R.S. 26:80 (D) unconstitutional.[2]

---

2. The Court of Appeal stated, "We fail to find in the so-called standards set forth

in Subsection D any legitimate relationship to the declared purpose of the Al-

In this Court the Board contends that the Court of Appeal erred in holding that LSA–R.S. 26:80(D) has no reasonable relationship to the moral, social, or economic welfare of the citizens of the State of Louisiana. Alternatively, the Board argues that the Court of Appeal erred in declaring the entirety of LSA–R.S. 26:80(D) unconstitutional.

Plaintiffs, respondents, contend that the instant statute is invalid and unconstitutional because of its invidious legislative discrimination imposing substantial and onerous burdens on the business activities of respondents in the wholesale distribution of alcoholic beverages. Respondents further contend that the instant statute is invalid "on the ground that the statute bears no substantial relationship to the public health and welfare, on the ground that the means adopted are not necessary for the accomplishment of any proper legislative purpose, and on the ground that the statute preempts the wholesale liquor business for present licensees—in violation of due process guarantees."

The stipulated facts of record set forth that:

"13—The use by the plaintiffs of their wholesale licenses for a number

of years prior to the effective date of Act 463 of 1962, the use by the plaintiffs of their 1962 wholesale licenses from the effective date of the Act through December 3, 1962, when these proceedings were instituted, and the continuation by the plaintiffs of their wholesale activities under protection of the Temporary Restraining Order issued by the court in these proceedings, have been restricted to importation of alcoholic beverages for sale and transfer to the respective retail licensees described in Paragraph 1–C and 2–C of this stipulation. [1–C states that "Reynolds, d/b/a Larry and Katz, has been the holder of retail liquor licenses for a number of years, * * *"; 2–C states that "The Schwegmanns own stock in a corporation which operates six super markets which have held and continue to hold retail liquor licenses issued in the name of Schwegmann Brothers Giant Super Markets, * *"] * * * The effect of the importation of these alcoholic beverages by the plaintiffs under their respective wholesale licenses and under the Temporary Restraining Orders has been to avoid a requirement by the associated retail

coholic Beverage Control Law (LSA–R.S. Title 26). We do not feel that the object of the law would be accomplished or that the interest of the public would be served in any way by it. In the absence of some protection of the moral, social, or economic welfare of the public to

justify Subsection D, it must be held in violation of the 'due process of law' provisions of the Fifth and Fourteenth Amendments of the Constitution of the United States and Article I, Section 2 of the Constitution of Louisiana."

permittees described in Paragraphs 1–C and 2–C to deal with and compensate wholesale permittees other than the plaintiffs in connection with the importation of these alcoholic beverages."

Our interpretation of the above stipulation is to the effect that as wholesalers, plaintiffs sell only to themselves as retailers. In other words, their wholesale liquor business is restricted to distribution and sale of liquor to retail businesses owned and controlled by them.

The stipulation of facts further sets forth that only three wholesale permittees (plaintiffs and one other company not now engaged in the wholesale liquor business) did not qualify for the issuance of a 1963 wholesale liquor license; fifty-three out of fifty-six previously licensed wholesale dealers were able to comply with all provisions of Subsection D of Section 80.

The stipulation further states that to obtain brand representation from a distillery or manufacturer is relatively a simple thing, and that at any time, any reputable wholesale dealer, without too much effort, can obtain representation of one or more brands from a distillery or manufacturer, though the best known brands are customarily exclusive with certain named wholesalers.

The test of whether the instant statute is a valid exercise of the police power in the constitutional sense depends on whether under all of the existing circumstances the regulation is reasonable, and whether it is really designed to accomplish a purpose properly falling within the scope of the police power. City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239. "We have no right to review the policy of wisdom of legislation because our jurisdiction is confined to determining the applicability, legality or constitutionality of laws. Lionel's Cigar Store v. McFarland, 162 La. 956, 967, 111 So. 341." Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11. See, Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940.

These consolidated cases were tried in the district court on stipulations of facts. We find no contradiction in the stipulations nor in the record to the following statement set forth in the Board's brief filed in this Court:

"The State Legislature, in enacting the subject statute, sought to establish within the state liquor business, a class of true wholesalers. Subsection D of this statute, in effect, legislatively defines the functions of a wholesaler, and limits wholesale liquor permits to those parties who discharge those functions. The Legislature is merely requiring, that for a person to obtain a wholesale liquor license, he must be in the wholesale liquor business, i. e., he must serve the various liquor outlets in his area. And he must have the facilities to service these retailers, i. e., an adequate in-

ventory and delivery equipment with which to distribute it. And as a practical matter, no party could participate in the wholesale liquor business unless he maintained brand representation with at least one distillery.

\* \* \* \* \* \*

" \* \* \* by establishing a class of true wholesalers, those parties who are economically unable to discharge the duties of dispensing alcoholic beverages at the wholesale level are eliminated from this phase of the liquor traffic. Only those parties who are economically able to have an adequate inventory, a place in which to store it, and delivery equipment with which to distribute it would be able to engage in the wholesale liquor business. The economic stability of the liquor traffic is of paramount importance. Subsection D of the subject legislation will necessarily aid in the achievement of this stabilization."

The stipulated facts reflect that the Board has issued approximately 1,475 retail liquor permits in the City of New Orleans and approximately 490 retail liquor permits in the Parish of Jefferson, which adjoins the Parish of Orleans. The stipulated facts also recite that "The annual figures of the Louisiana Revenue Department would reflect that approximately 370,000 cases of alcoholic beverages are sold for export, on which the Revenue Department receives an

inspection fee of 30¢ per case. The annual figures of the Louisiana Revenue Department would reflect that approximately 1,-400,000 cases of alcoholic beverages are sold for consumption in Louisiana, on which the Revenue Department receives a tax of $4.03 per case."

It is evident that the liquor business in Louisiana is operated on a large scale; it is also evident that the liquor business is voluminous and is one of rapid turnover.

We are constrained to deduce from the allegations of the Board's brief and the above facts that the Legislature desired to stabilize the *wholesale liquor business* and create within the liquor trade *a true class of wholesalers* who are economically stable and financially responsible. To accomplish this purpose the Legislature enacted the instant statute (the facts stipulated state that the proposed legislation contained in House Bill 409, as amended in the Louisiana Senate, was approved by a Conference Committee of the Louisiana House and Senate recommending acceptance of the Senate version of the Bill), which sets forth certain standards for those engaged in *wholesale liquor traffic*.

We thus approach a determination of whether the provisions of LSA–R.S. 26:80 (D) have a just foundation in reason (State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999, 67 L.R.A. 70), whether they are arbitrary or discriminatory, and

whether they affect the moral, social, or economic welfare of the public.

The instant statute applies equally to all persons who come within the common class of wholesale liquor dealers (this finding was also made by the Court of Appeal). It requires that wholesalers maintain warehouse space. It requires that such space be sufficient to store certain specified quantities of liquor. It requires that a certain stock of liquor be maintained. It requires that delivery equipment be maintained. It requires that brand representation be maintained with at least one distillery or liquor manufacturer (supra, we said that the facts stipulated set forth that this was not difficult). Finally, it requires that a certain amount of the wholesaler's sales be made to retailers, and that such sales account for a certain percentage of the gallonage handled by the wholesaler (supra, we set forth the percentages and amounts required by the statute).

■ It is hardly necessary to state that an economically stable and financially responsible wholesale liquor business (as stated supra in the Board's explanation of the purpose of the instant statute) affects the social, moral, and economic welfare of the public. The provisions of the instant statute if enforced will undoubtedly engender stability and responsibility. Therefore, a definite relationship exists between LSA–R.S. 26:80(D) and the purpose for which it was enacted.

■■ In considering the constitutionality of LSA–R.S. 26:80(D), it is not the prerogative of this Court to search for the legislative motive, State v. Goldfinch, 241 La. 958, 132 So.2d 860; no showing has been made as to why the Legislature adopted certain specified amounts and percentages, but no showing has been made to the effect that they are arbitrary, discriminatory, or prejudicial. We do not find them unreasonable, and no showing has been made to that effect. As stated supra, an overwhelming number of applicants have been able to qualify as wholesale liquor dealers; this fact substantiates the reasonableness of the provisions of LSA–R.S. 26:80(D). We conclude that the statute is a legitimate exercise of the State's police power; it violates neither the Due Process Clause of Art. I, Sec. 2, of the Constitution of Louisiana nor the Due Process provision of the Fifth and Fourteenth Amendments to the Constitution of the United States.

■ The burden herein rested upon the plaintiffs to show the unconstitutionality of LSA–R.S. 26:80(D). In their original petitions, they set forth many reasons for their allegations of unconstitutionality; we do not find that they have proved such allegations. It is a familiar principle of constitutional law that one who attacks the constitutionality of a statute has the burden of showing by clear and cogent evidence that the statute is unconstitutional. Kansas City Southern Railway Company v. Reily, 242

La. 235, 135 So.2d 915; Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113; 16 C.J.S. Constitutional Law, § 99, p. 388.[3]

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is reversed and set aside; the judgments of the trial court in these consolidated cases of Lawrence J. Reynolds, d/b/a Larry & Katz, vs. Louisiana Board of Alcoholic Beverage Control, and John Schwegmann, Jr. and Paul Schwegmann vs. Louisiana Board of Alcoholic Beverage Control are affirmed. All costs to be paid by plaintiffs.

HAMITER, J., concurs in the result.

SANDERS and SUMMERS, JJ., dissent and will assign written reasons.

SANDERS, Justice (dissenting).

The statute is unreasonable and discriminatory. I agree with the Court of Appeal's decision that it is unconstitutional. See 173 So.2d 57.

For instance, the statute prohibits issuance of a wholesale permit to any person or the holding of a permit by any person, unless "at all times throughout the license year" he maintains sales to twenty percent of the retailers in his trade area. LSA-R.S. 26:80D(5).[1] This provision will bar the issuance of future wholesale permits, for no applicant has such a volume of customers upon beginning business. Therefore, the requirement restricts wholesale business to those presently engaged in it. Administrative regulations cannot remedy the vice, because a regulation contrary to the statute's express provisions will be invalid. See Charbonnet v. Board of Architectural Examiners, 205 La. 232, 17 So.2d 261.

Exempted from the statute are: "Persons engaged primarily in the sale, handling,

3. In Duke Molner Wholesale Liquor Co. v. Martin, 180 Cal.App.2d 873, 4 Cal.Rptr. 904, Certiorari denied 364 U.S. 870, 81 S.Ct. 112, 5 L.Ed.2d 92, a regulation similar to the instant statute was declared valid. The District Court of Appeal, Second District, Div. 1, California, stated:

"The appellants have failed to establish that the rule is invalid. An administrative rule which is legislative in character is subject to the same test with reference to its validity as is an act of the Legislature. * * * The presumption is that the rule under the circumstances set forth in this instance is reasonable and proper. * * *

"The Department is well within its rights to require a high standard of economic stability for those who are to

hold wholesalers licenses. Schaub's, Inc. v. Department of Alcoholic Beverage Control, supra, 153 Cal.App.2d 858, 315 P. 2d 459."

1. The California regulation upheld in Duke Molner Wholesale Liquor Co. v. Martin, 180 Cal.App.2d 873, 4 Cal.Reptr. 904, Certiorari denied 364 U.S. 870, 81 S.Ct. 112, 5 L.Ed.2d 92, contains no such requirement. It provides only that no license shall be "held" by any person who does not sell to "retailers generally rather than a selected few retailers." The statute then sets forth two instances in which it is "conclusively presumed" that a wholesaler is selling to retailers generally based upon percentage of retail customers and volume of small sales.

distribution, and storage of alcoholic beverages which are *ultimately* delivered or transported beyond the borders of the state * * *" (Italics mine).

Proponents of the statute suggest this provision exempts "border houses" that primarily "export" alcoholic beverages to other states. But as phrased, the exemption is not limited to exporters, properly speaking. It also applies to sales within the state in domestic transactions, when the liquor is *ultimately* and for any purpose transported across the state line. The exemption therefore depends upon the fortuitous travels of the commodities sold. I think the exemption unconstitutionally discriminates between wholesalers in the state.

For the reasons assigned, I respectfully dissent.

SUMMERS, Justice (dissenting).

In my view the provisions of the legislative act in contest (R.S. 26:80(D)) are unreasonable, arbitrary and discriminatory. The enactment bears no real and substantial relation to the public health, safety, morals or any other phase of the general welfare. The act is, therefore, unconstitutional, and it is this court's province and duty to decree its invalidity. City of Lafayette v. Justus, 245 La. 867, 161 So.2d 747 (1964).

The arbitrary and unnecessary requirements and onerous burdens of the act are aimed at the plaintiffs in this case and no others among the many wholesale liquor dealers of the State. Literal application of the act, particularly the requirement that the holder thereof maintain sales to at least 20% of the retailers in his area, would foreclose the issuance of any further wholesale liquor licenses, because no applicant for a license can be selling to 20% of the retail trade when he applies. The net effect of this and the other requirements concerning warehouse space and delivery equipment is to virtually set aside the wholesale alcoholic beverage distribution business for those who presently hold licenses other than plaintiffs. Such a regulation is not in the public interest, but, rather, it is an attempt to give an economic advantage to those now engaged in this particular business as against all those who attempt to enter that business hereafter. The result will be to deprive the public generally of the beneficial effects of competition. Mayflower Farms v. Ten Eyck, 297 U.S. 266, 56 S.Ct. 457, 80 L.Ed. 675 (1936).

Hence, a proper legislative purpose for which the police power of the State can be invoked does not exist here. To the contrary, police power has been utilized to accomplish an unwholesome objective by means of discriminatory and arbitrary regulations.

In an attempt to devise legislation which would discriminate solely against the plaintiffs in this case, the drafters of this act

have imposed regulatory measures which bear no rational relation to the interest of the public at large. By reason thereof the police power of the State has been abused and misused, and the act is unconstitutional.

I respectfully dissent.